[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13679
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20876-JEM-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ALLAND PHILIDOR,

Defendant - Appellant.

_____

No. 12-13724
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20876-JEM-3

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,


                    versus


WILLMAN PHILIDOR,

                                        Defendant - Appellant.

                    _____

                Appeals from the United States District Court
                   for the Southern District of Florida
                    _____

                        (May 29, 2013)

Before TJOFLAT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

        Alland Philidor and his brother Willman Philidor (collectively, the

"Philidors") each pled guilty to one count of conspiracy to steal government funds,

in violation of 18 U.S.C. § 371, and one count of theft of government funds, in

violation of 18 U.S.C. § 641, for their participation in a scheme that involved

submitting fraudulent tax returns to the Internal Revenue Service using stolen

Social Security numbers, receiving refund checks from the federal government,

and depositing these proceeds in various bank accounts of corporate entities

controlled by them.  The presentence investigation reports ("PSI") indicated that

                            2

there were thousands of victims whose Social Security numbers were fraudulently used by the Philidors. Accordingly, the PSI recommended that a six-level enhancement be applied to their base offense level because the offense involved 250 or more victims. United States Sentencing Commission, Guidelines Manual, § 2B1.1(b)(2)(C) (Nov. 1, 2012). The PSI also noted that the government had only positively identified twenty-six of the taxpayer victims.

The Philidors objected to the statements in the PSI concerning the number of victims and the six-level enhancement. Although they conceded that the government's discovery materials identified more than 250 Social Security numbers that were used to file over 250 fraudulent tax returns for which they received proceeds, the Philidors argued that the government failed to meet its burden to show that the offense involved 250 actual, living victims. The District Court overruled the objection and imposed a sentence incorporating the six-level enhancement.

The Philidors appealed their sentence, each raising the same issue, and we consolidated their appeals. They argue that the District Court erred in imposing the § 2B1.1(b)(2)(C) enhancement because the government did not show by a preponderance of the evidence that 250 of the listed Social Security numbers were authentic and belonged to living people. Upon review of the record and consideration of the parties' briefs, we affirm the District Court.

3

We review a district court's factual findings for clear error. United States v. Gupta, 572 F.3d 878, 887 (11th Cir. 2009). The district court may rely on undisputed facts contained in the PSI in determining a sentence. United States v. Bennett, 472 F.3d 825, 832 (11th Cir. 2006). But when a defendant challenges one of the factual bases of his sentence, the government has the burden of proving the disputed fact by a preponderance of the evidence. Gupta, 572 F.3d at 887. A fact finding is clearly erroneous when, after reviewing all the evidence, the court "is left with the definite and firm conviction that a mistake has been committed." Id.

The Sentencing Guidelines provide for a six-level increase to a base offense level if the crime involves 250 or more victims. U.S.S.G. § 2B1.1(b)(2)(C). For the purposes of § 2B1.1, "victim" means "any person who sustained any part of the actual loss" attributed to the crime. Id. comment. (n.1) (application note). In cases involving means of identification, such as a Social Security number, "victim" also includes "any individual whose means of identification was used unlawfully or without authority." Id. comment. (n.4(E)) (application note). A means of identification must be of an "actual (i.e., not fictitious) individual." Id. comment. (n.1); see 18 U.S.C. § 1028(d)(7) (a means of identification must be able to be used "to identify a specific individual").

The District Court did not clearly err in finding that there were 250 or more victims affected by the Philidors' crime. The undisputed portions of the PSI

4

indicate that the Philidors' bank statements list over 250 Social Security numbers and that these numbers correspond to tax refunds issued based on fraudulently submitted tax returns.  Based on the fact that the Internal Revenue Service issued refunds for tax returns listing those numbers, the District Court made the legitimate inference that the Social Security numbers corresponded to actual persons.  See United States v. Chavez, 584 F.3d 1354, 1367 (11th Cir. 2009) (stating that the district court is "free to make" reasonable inferences but cannot rely on an inference that is "speculative to the point of being clearly erroneous").  As we have said in the context of government-issued identification, it is not necessary to present proof that the government verifies an individual's identity before it issues a driver's license or passport, because it is reasonable to conclude, "based on ordinary human experience," that the government "routinely obtain[s] an applicant's identity to verify the authenticity of that identity."  United States v. Doe, 661 F.3d 550, 563 (11th Cir. 2011) (internal quotation marks omitted); see United States v. Gomez-Castro, 605 F.3d 1245, 1249 (11th Cir. 2010) (stating that, to infer that governments verify the identity information they require applicants to provide, "no special proof is required; a trier of fact can rely on common sense").  Here, likewise, the District Court could infer, based on common sense and ordinary human experience, that the Internal Revenue Service verifies identifying information, like Social Security numbers, before issuing a tax refund.

5

Accordingly, the fact that the Internal Revenue Service paid the refunds to the Philidors indicates that the Social Security numbers used to procure those refunds are associated with real people. The District Court's conclusion was not clearly erroneous.

Finally, the District Court did not err in applying the § 2B1.1(b)(2)(C) enhancement without first finding that the victims were living. The language in the sentencing guidelines is to be given its plain and ordinary meaning. United States v. Pompey, 17 F.3d 351, 354 (11th Cir. 1994). A victim in this context is a person whose means of identification was used unlawfully. A "means of identification" is limited to "an actual (i.e., not fictitious) individual." U.S.S.G. § 2B1.1 comment. (n.1). Because "i.e." is an abbreviation for "that is," the plain meaning of the language used by Congress was that "not fictitious" was the exclusive definition for "actual." See Black's Law Dictionary 749 (7th ed. 1999). We recently came to a similar conclusion in the context of the aggravated identity theft statute, 18 U.S.C. § 1028A(a)(1). See United States v. Zuniga-Arteaga, 681 F.3d 1220, 1223 (11th Cir. 2012) (concluding that 18 U.S.C. 1028A(a)(1) "punishes theft of the identity of an actual person, regardless of whether that person is still alive"). Accordingly, the plain meaning of the phrase "actual" does not distinguish between living and deceased persons.

We find no error in the District Court's application of the § 2B1.1(b)(2)(C)

enhancement.  The sentence imposed by the District Court is

AFFIRMED.