[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13037
Non-Argument Calendar
_____

D.C. Docket No. 4:12-cr-00207-BAE-GRS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KEVIN LAMONT GREEN,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(February 11, 2014)

Before CARNES, Chief Judge, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Kevin Green appeals his 66-month sentence for possession of firearms as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), on two grounds.  First, he argues that the district court clearly erred in applying an aggravating-role enhancement under United States Sentencing Guidelines § 3B1.1(c).  Second, he contends that his sentence is substantively unreasonable.

I.

In June 2012, New Jersey State Police informed the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) that Green was trafficking firearms from Georgia to New Jersey in exchange for heroin.  As a convicted felon, Green could not purchase the firearms himself, so he asked an acquaintance, Tishard Brown, to do it.  Brown was in Green's debt, and Green said that purchasing the firearms for him would make them even.  Brown agreed, and on June 15, 2012, Green drove Brown from Savannah, Georgia to Arrowhead Pawn Shop near Atlanta, Georgia, where he purchased three firearms.  When filling out the ATF paperwork, Brown indicated that he was the actual purchaser of the firearms, but he later related that Green had directed him to purchase those firearms.  The three firearms purchased that day had not been recovered as of the time of Green's sentencing.

On September 20, 2012, Green told Brown that they would be returning to Atlanta; he drove Brown back to the Arrowhead Pawn Shop the very next day. This time, they selected five firearms to purchase, but the purchase was delayed in

2

order for Brown's background check to be processed. ATF agents got in contact with Arrowhead's staff while the background check was processing, and they agreed to notify the ATF when it was complete. The background check cleared on September 26, and Brown told an Arrowhead employee that he would come pick up the firearms next day. On that day, Green again drove Brown from Savannah to the pawn shop so that they could pick up the guns. ATF agents, who had the premises under surveillance, observed Brown and Green exit the store with a box containing five guns. After Green drove Brown back to Savannah, he dropped Brown off but kept the firearms in his car. ATF agents pulled Green over, found the weapons, and placed him under arrest.

A federal grand jury indicted Green on one count of conspiracy to make false statements in the purchase of firearms and to possess firearms as a convicted felon, in violation of 18 U.S.C. § 371, and one count of possession of firearms as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Green entered into a plea agreement under which he pleaded guilty to the possession charge in exchange for the government's dismissal of the charge of conspiracy. At sentencing, the district court overruled both of Green's objections to the presentence investigation report (PSR). Green's sentencing guidelines range of imprisonment was 46 to 57 months, but the court varied upward and sentenced Green to, among other things, 66 months imprisonment.

Green now appeals his sentence, arguing that the district court erred in applying an aggravating-role enhancement to his base offense level and that the court's imposition of an upward variance resulted in a sentence that is substantively unreasonable.

## II.

## A.

We review a district court's determination of a defendant's role in the offense for clear error. United States v. Jiminez, 224 F.3d 1243, 1250–51 (11th Cir. 2000). Accordingly, we will reverse the district court's application of the aggravating-role enhancement only if we are "left with the definite and firm conviction that a mistake has been committed." United States v. Philidor, 717 F.3d 883, 885 (11th Cir. 2013).

Section 3B1.1(c) of the Sentencing Guidelines provides for a two-level enhancement to a defendant's offense level if "the defendant was an organizer, leader, manager, or supervisor in any criminal activity" not falling within the purview of subsections (a) or (b). U.S.S.G. § 3B1.1(c) (Nov. 2012). In determining whether a defendant exercised a leadership role in the commission of an offense, courts should consider the following factors:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the

4

offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. n.4.  However, the leadership enhancement should not be applied to a defendant who "merely suggests committing the offense." Id.

In this case, the district court determined that Green was eligible for the aggravating-role enhancement for several reasons.  First, the court found persuasive the fact that Green was the principal for whom Brown made the purchases.  The court noted that Green "was the person with the money" and that he was the one who ultimately "wanted the weapons."   Second, the court found that Green exercised almost exclusive control and authority over the operation, and that he planned and organized the offense.  The facts the court used to make this determination were that Green recruited Brown to serve as his accomplice, identified the weapons store, drove Brown to that store, selected the weapons he wanted, and furnished the money to purchase the weapons.

On appeal, Green contends that he and Brown were in fact co-equal partners in the conspiracy and that the district court erred by concluding otherwise.  Green cites as evidence of this contention the fact that neither codefendant claimed a larger share of the fruits of the crime[1] and that both participated in the crime in

---

[1] Although this issue is not dispositive either way, we are not convinced that Green did not claim and receive a larger share of the fruits of the crime than Brown.  Brown did not retain any of the eight firearms that he and Green purchased while Green had five in his possession when he was apprehended.

5

different and complementary ways.  For example, while Green provided transportation and finances, Brown handled logistics like completing government forms, submitting to a background check, and conducting the transaction with Arrowhead.

Green also makes much of certain discrepancies among the various accounts of the offense.  One such discrepancy can be found by comparing the investigating ATF agent's account of the offense with the account contained in the PSR.  In an affidavit in support of the criminal complaint filed in this case, the ATF agent stated that the store clerk who had helped Brown on his September 21 trip to the pawn shop reported that Brown had been accompanied by another individual (later identified as Green) who merely "appeared to be helping Brown pick out firearms." (emphasis added).  Although the PSR also references the store clerk's account, it elsewhere relates Brown's version of events, in which "Green directed Brown to purchase four Jiminez Arms 9mm pistols and one Masterpiece Arms pistol."[2] (emphasis added).  On the basis of the account contained in the affidavit, Green contends that he and Brown "jointly select[ed] those firearms" and were therefore equal participants in the crime.  Green also takes issue with the government's assertion (which the district court adopted) that he "recruited" Brown to be his accomplice.  Instead, Green maintains that he merely offered

_____

[2] Brown's account of the June 15 trip to the pawn shop, as reported in the PSR, also has Green "direct[ing] Brown to purchase several firearms."

Brown an opportunity to satisfy a debt that Brown accepted.  Once again, there are discrepancies between different sources of evidence on this point.  While the PSR reports Brown's statement that Green only "suggested" that he repay the debt he owed to Green by purchasing the guns,[3] the ATF agent's affidavit states that Green "told [Brown] that he needed to purchase some firearms for him in order to repay the money that was owed."

The district court's determination that Green played a supervisory or leadership role in the offense "is entitled to. . . deference on appeal." United States v. Rendon, 354 F.3d 1320, 1332 (11th Cir. 2003) (quotation marks omitted). While Green quibbles with the sufficiency of the evidence to support one or two of the factors a court should consider under U.S.S.G. § 3B1.1, we have repeatedly observed that "[t]here is no requirement that all the considerations have to be present in any one case."  See, e.g., United States v. Ramirez, 426 F.3d 1344, 1356 (11th Cir. 2005).  And we have upheld § 3B1.1 sentence enhancements where the defendant "had decision-making authority and exercised control" as Green did here.  United States v. Saurez, 313 F.3d 1287, 1294 (11th Cir. 2002) (upholding enhancement where the defendant directed the movement of cocaine from one house to another, instructed co-conspirators on how to transport the drugs, and

---

[3] Although the specific paragraph of the PSR cited by Green states only that Green "suggested" the plan to Brown, it elsewhere states that he "recruited Brown to purchase the firearms."

7

planned where to hide the drugs); see also United States v. Mandhai, 375 F.3d 1243, 1248 (11th Cir. 2004) (upholding enhancement where the defendant recruited one other individual into a terrorist plot, prompted that person to purchase weapons, and briefed him on the bombing plan); United States v. Lozano, 490 F.3d 1317, 1323 (11th Cir. 2007) (upholding enhancement where defendant negotiated the sale of counterfeit products to undercover agents, instructed another employee to engage in counterfeit sales, and oversaw the warehouse of products in the principal leader's absence); Rendon, 354 F.3d at 1332 (upholding enhancement where the defendant hired his co-conspirators for the drug trafficking trip, drove the boat to the meet-up point, and directed them to throw the drugs overboard when a Navy plane spotted them).

In this case, there was evidence in the record supporting the district court's finding that Green's participation in the crime outstripped Brown's and that he exercised control and authority over Brown. The PSR and affidavit show that it was Green who decided which pawn shop to purchase the guns from, drove Brown to and from the pawn shop, selected the guns to be purchased, and provided the money for the purchase. At sentencing, Green did not object to any of the facts set out in the PSR.[4] His failure to object effectively admitted those allegations of fact

---

[4] Green did file two objections to the PSR, but both of them related to the probation office's calculation of the guidelines range, not the factual accuracy of the PSR's content.

for sentencing purposes, so he cannot complain about them now.  See United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006).  Because there is "no clear error in cases in which the record supports the district court's findings," United States v. Petrie, 302 F.3d 1280, 1290 (11th Cir. 2002), we reject Green's argument that the enhancement was unwarranted.  The evidence in the record amply supports the district court's determination that Green played a leadership or supervisory role in this offense.

B.

Green also contends that his sentence is substantively unreasonable in view of the sentencing factors set forth in 18 U.S.C. § 3553(a).  We review the reasonableness of a sentence under a deferential abuse of discretion standard and in light of the totality of the circumstances.  Gall v. United States, 552 U.S. 38, 41, 51, 128 S.Ct. 586, 591, 597 (2007).  As the party challenging the sentence, Green bears the burden of showing that it is unreasonable in light of the record and the § 3553(a) factors.  United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).  We will not set aside a sentence merely because we would have decided that another sentence was more appropriate; instead, we must be "left with the definite and firm conviction that that the district court committed a clear error of judgment

---

Counsel for Green explicitly stated on the record that neither "Mr. Green nor I have any objection to the factual accuracy of the PSR."

9

in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted).

When sentencing Green, the district court declined to impose an upward departure but did impose an upward variance, which resulted in a sentence that was above the advisory guidelines range. Green asserts that the district court erred by varying upward after it had refused the probation office's request for an upward departure based on the same facts. But his argument overlooks the fact that the standards for an upward departure differ from the standards for an upward variance.

The sentencing guideline under which the probation office requested an upward departure, U.S.S.G. § 4A1.3, applies only when the defendant's criminal history category "substantially under-represents the seriousness of the defendant's criminal history" or when there is a high likelihood that the defendant will commit other crimes. Id. § 4A1.3(a)(1). Section 3553(a), by contrast, allows a district court to consider a much wider range of factors. In this case, for example, the district court specifically mentioned the following statutory factors: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (4) the

10

provision of adequate deterrence to criminal conduct; and (5) the need to protect the public from the defendant.  18 U.S.C. § 3553(a)(1)–(2).  Although it must evaluate all of the § 3553(a) factors, a district court may "attach great weight to one factor over others."  United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009) (quotation marks omitted).  The district court in this case gave special weight to the danger to the public posed by Green's conduct, his extensive criminal history, history of recidivism, and his lack of stable employment history.

The requirements for imposing an upward departure under U.S.S.G. § 4A1.3 are narrower than the requirements for varying upward under § 3553(a), so it is not unusual for a district court to impose one without the other.  We have recognized that a district court may rely on the same facts to impose an upward variance without also enhancing a sentence range under the guidelines, and that principle applies here.  See United States v. Rodriguez, 628 F.3d 1258, 1264 (11th Cir. 2010) (affirming the district court's decision to impose an upward variance based, in part, on the number of victims involved in the offense despite its refusal to impose a multiple-victim enhancement under the guidelines).  Moreover, the fact that the court ultimately imposed a sentence well below the statutory maximum of ten years supports the sentence's reasonableness.  See 18 U.S.C. § 924(a)(2) (providing ten-year statutory maximum); United States v. Gonzalez, 550 F.3d

11

1319, 1324 (11th Cir. 2008) (holding that a defendant's sentence was reasonable in part because it was well below the statutory maximum).

The district court in this case considered the § 3553(a) factors and specifically discussed why the variance was justified. In light of this record and the justifications cited by the district court for the upward variance, we do not have the "the definite and firm conviction that that the district court committed a clear error of judgment in weighing the § 3553(a) factors." Irey, 612 F.3d at 1190.

**AFFIRMED**.