[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13004
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cr-20330-MGC-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ADRIAN ORTIZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 21, 2014)

Before TJOFLAT, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Adrian Ortiz appeals his sentence of 90-months imprisonment after pleading guilty to one count of conspiracy to traffic in and use unauthorized credit cards in violation of 18 U.S.C. § 1029(b)(2), and three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).  He argues that the District Court erred both by failing to identify when he joined the conspiracy as well as holding him accountable for the entire loss amount generated by the conspiracy.  After careful review, we affirm.

## I.

Ortiz admitted to playing a key role in a scheme to create counterfeit credit cards that were used to purchase Walmart gift cards.  Ortiz, along with one other coconspirator, would send out members of the conspiracy across the United States—at least 40 states—to purchase gift cards and return them to Miami, Florida.  After the gift cards were in Miami, they were sold to businesses that used them to buy cigarettes.  Sometimes Ortiz himself would go and purchase gift cards; Walmart surveillance cameras captured him in Colorado, Missouri, and Illinois.

An investigation into the activity of Ortiz and others by federal and Florida law enforcement began in April 2011.  In a post-arrest statement, one member of the conspiracy recruited by Ortiz described him as one of the "chiefs" of the operation, and stated that Ortiz planned his travels and supplied him with counterfeit credit cards.  Ortiz and others were indicted in May 2012, charged with

2

a conspiracy that ran "[f]rom in or around April 2011, the exact date being unknown to the Grand Jury." After Ortiz pleaded guilty, his presentence investigation report (PSR) recounted that there was a loss amount of $15,000,000, but did not give details about how this number was calculated. Pursuant to United States Sentencing Guidelines (USSG) § 2B1.1(b)(1)(K) (2011), this loss amount resulted in a recommendation of a 20-level enhancement. Ortiz objected to the loss amount and corresponding enhancement, claiming the amount lacked "any . . . factual basis or method of computing a loss amount."

At Ortiz's sentencing hearing, the district court heard from two government witnesses. U.S. Secret Service Special Agent Tyler Jett testified about the investigation into the conspiracy and how it led to Ortiz. Jett stated that he obtained the $15 million dollar figure from Walmart, which was calculated "based on the gift cards that were purchased." Jett also clarified that the figure included gift cards purchased beginning in 2010, because: "I would think that the entire conspiracy would be attributable to him because from codefendant statements, he is the one that was at the top, he was the manager from the very beginning. And the earliest gift cards we have identified were back in 2010."

Next, Walmart fraud investigator Mary Meadar testified. Because the first fraudulently purchased gift card that she could identify was redeemed in 2010, Meadar compiled records from January 1, 2010 through the date that Ortiz was

3

arrested. Those records revealed that the total actual loss amount attributable to the stolen credit card accounts was over $15 million. Meadar was not able to identify what portion of the loss occurred before or after April 2011.

After this testimony, Ortiz renewed his objection to the loss amount calculation and corresponding enhancement. He argued in part that the evidence only linked him to one of approximately twelve entities that redeemed the fraudulently purchased gift cards. Counsel for Ortiz admitted his client "had a connection that enabled him to get credit cards that were fraudulent credit cards" and that he "recruited the people that were involved in this, in this conspiracy, the codefendants that have been charged as part of this indictment, he gave them credit cards that had fraudulent information which allowed them to then travel to these other places and buy gift cards." He was asked: "And wasn't it reasonably foreseeable that if he got false and fraudulent credit cards, that people would use them to buy stuff?" His answer: "Absolutely." Ultimately the district court rejected Ortiz's argument, finding that he was accountable for the entire $15 million total loss amount.

## II.

First, Ortiz argues that the district court erred in failing make an individualized finding regarding the date he entered the conspiracy. Because he is raising this issue for the first time on appeal, we review only for plain error.

4

United States v. Moreno, 421 F.3d 1217, 1220 (11th Cir. 2005). To demonstrate plain error, Ortiz must demonstrate that (1) error existed, (2) the error was plain, and (3) the error affected his substantial rights. Id. This third prong almost always requires a reasonable probability that a different result would have obtained but for the error. United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005).

Under USSG § 1B1.3, the district court may hold participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of coconspirators in furtherance of the conspiracy. United States v. Hunter, 323 F.3d 1314, 1319 (11th Cir. 2003). A defendant is accountable for the conduct of others occurring after his entry if that conduct was both: (1) in furtherance of the jointly undertaken criminal activity; and (2) reasonably foreseeable in connection with that criminal activity. USSG § 1B1.3(a)(1)(B). The district court "must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant." Hunter, 323 F.3d at 1319 (quotation marks omitted). "Only after the district court makes individualized findings concerning the scope of criminal activity the defendant undertook is the court to determine reasonable foreseeability." Id. That being said, "a sentencing court's failure to make individualized findings regarding the scope of the defendant's activity is not grounds for vacating a sentence if the record support[s] the court's determination with respect to the offense conduct, including the imputation of others' unlawful

5

acts to the defendant." United States v. Petrie, 302 F.3d 1280, 1290 (11th Cir. 2002).

Although the district court failed to make an individualized finding regarding the date Ortiz joined the conspiracy, there was sufficient evidence here to support the district court's implicit finding that Ortiz joined the conspiracy in 2010. Jett testified that fraudulently purchased gift cards traceable to the conspiracy were first redeemed in 2010, and that Ortiz's coconspirators had identified him as a "manager from the very beginning." Meadar corroborated this testimony, stating she personally identified the stolen credit card accounts used during the conspiracy to purchase gift cards, the first of which was redeemed in 2010. Thus, while the court may have committed plain error when it neglected to make a specific finding of the date Ortiz entered the conspiracy, see Hunter, 323 F.3d at 1319, reversal is not warranted, see Petrie, 302 F.3d at 1290.

Ortiz principally relies upon two cases to argue to the contrary, but both are readily distinguishable. In Hunter, this Court did find the district court failed "to make particularized findings as to the scope of criminal activity undertaken by each Appellant." 323 F.3d at 1316. But in that case the defendants were low level participants in the conspiracy, and there was "no proof in this record that any of the Appellants assisted . . . in designing and executing the larger illegal scheme." Id. at 1321. In contrast, Ortiz admitted here that he was a principal architect of the

6

scheme, so <u>Hunter</u> is of no help to him.  And in <u>United States v. Goodheart</u>, 345 F. App'x 523, 525 (11th Cir. 2009), the defendant clearly "joined the conspiracy after its inception."  The opposite is true for Ortiz:  the record and testimony indicated that he was a part of the conspiracy at its inception.  Therefore, <u>Goodheart</u> is also inapposite.

In sum, Ortiz cannot show that his substantial rights were affected because even if the district court did not explicitly make an individualized finding about when Ortiz entered the conspiracy, evidence nonetheless supported the 2010 date used by the district court.  See <u>Petrie</u>, 302 F.3d at 1290.

**III.**

Second, Ortiz contends that the district court erred in holding him accountable for the entire loss amount generated by the conspiracy rather than just a portion of it.  He specifically argues that there were approximately twelve companies that redeemed gift cards, but the government only demonstrated his ties to one of them.

We normally review the factual findings underlying the district court's sentencing determination for clear error.  <u>United States v. Philidor</u>, 717 F.3d 883, 885 (11th Cir. 2013).  A finding of fact is clearly erroneous when, after reviewing all the evidence, we are "left with the definite and firm conviction that a mistake has been committed."  <u>Id.</u> (quotation marks omitted).  "Although review for clear

error is deferential, a finding of fact must be supported by substantial evidence." United States v. Rodriguez, 732 F.3d 1299, 1305 (11th Cir. 2013) (quotation marks omitted).

The district court may rely on undisputed facts contained in a PSR when determining a sentence, but "once a defendant objects to a fact contained in the [PSR], the government bears the burden of proving that disputed fact by a preponderance of the evidence." United States v. Martinez, 584 F.3d 1022, 1027 (11th Cir. 2009). Ultimately, "[i]t is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence." Id. (quotation marks omitted).

The district court did not clearly err in finding Ortiz accountable for $15 million in total losses and imposing an enhancement that reflected this amount. Ortiz does not dispute the calculation of the loss figure itself, but argues only that he should not be held accountable for the entire amount. A defendant is accountable for conduct, his own or that of others, taken in furtherance of a joint criminal activity that was reasonably foreseeable, Hunter, 323 F.3d at 1319; USSG § 1B1.3(a)(1)(B), and here evidence established Ortiz's accountability for the entire loss figure.

As an initial matter, Ortiz's argument concerning the lack of a demonstrated connection between him and all of the entities that redeemed gift cards he and his

8

coconspirators fraudulently purchased is misplaced. As the government clarified at the sentencing hearing, the $15 million loss figure consisted of the total amount of gift cards fraudulently <u>purchased</u> using stolen credit cards during the course of the conspiracy—it did not, as Ortiz seems to think, represent the amount of gift cards <u>redeemed</u>. The conspiracy generated its losses at the time the gift cards were fraudulently purchased, regardless of when they were redeemed or by whom.

Ultimately, Ortiz's accountability for the entire $15 million loss amount is well supported by two principal facts. First, evidence showed that Ortiz joined the conspiracy sometime in 2010, and the $15 million loss figure at issue was calculated from that time through the date of his arrest. Second, evidence including Ortiz's concession that he was a manager or supervisor established that he served a leading role in the conspiracy. As a result, it was not clearly erroneous for the district court to hold him accountable for the entire loss caused by the conspiracy. See <u>Hunter</u>, 323 F.3d at 1319; USSG § 1B1.3(a)(1)(B).

## IV.

The district court sentence is **AFFIRMED.**

9