[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15883
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20939-DMM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BEHRMANN DESENCLOS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 24, 2015)

Before ED CARNES, Chief Judge, TJOFLAT and WILSON, Circuit Judges.

PER CURIAM:

Behrmann Desenclos pleaded guilty to one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and four counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A.  He appeals those convictions, arguing that the district court clearly erred in accepting his guilty plea and abused its discretion in denying his motion to withdraw it.  He also appeals the 108-month sentence that the court imposed, arguing that the court erred in holding him accountable for an intended loss of $4 million.

I.

Federal Rule of Criminal Procedure 11 outlines the procedure that a district court must follow before it accepts a defendant's guilty plea.  During the defendant's plea colloquy, which is sometimes called a "Rule 11 hearing," the court places the defendant under oath, addresses him personally in open court, and asks him several questions designed to determine whether his guilty plea is knowing and voluntary.  See Fed. R. Crim. P. 11(b).  If the court accepts the defendant's guilty plea, it makes an "implicit factual finding that the requirements of Rule 11 were satisfied."  United States v. DePace, 120 F.3d 233, 236 (11th Cir. 1997) (quotation marks omitted).  We review that factual finding for clear error, looking at the plea colloquy "as a whole" in doing so.  Id.  Under the clear error standard of review, we will not vacate a conviction unless we are "left with the definite and firm conviction" that the court erroneously accepted the guilty plea.

2

United States v. Philidor, 717 F.3d 883, 885 (11th Cir. 2013) (quotation marks omitted).

Viewed "as a whole," the record of Desenclos' plea colloquy shows that the district court did not clearly err in accepting his guilty plea. In its colloquy with Desenclos, the court satisfied the three "core objectives" of Rule 11, namely: "(1) ensuring that the guilty plea is free of coercion; (2) ensuring that the defendant understands the nature of the charges against him; and (3) ensuring that the defendant is aware of the direct consequences of the guilty plea." United States v. Monroe, 353 F.3d 1346, 1354 (11th Cir. 2003). Desenclos, who was under oath, confirmed that he was "pleading guilty voluntarily and of [his] own free will." He also confirmed that he "underst[oo]d the nature of each of [the] charges" against him after the court described the charges in the indictment. Finally, Desenclos confirmed that he understood the trial and other rights he would be giving up by pleading guilty. We presume that Desenclos' sworn statements were true unless he offers compelling evidence to the contrary. See United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994); see also Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977). He has not done so.

Although Desenclos "expressed reservations, questions[,] and hesitation in proceeding with his guilty plea" (as he puts it), those so-called instances of "trouble" during his plea colloquy do not change our conclusion. The fact that

Desenclos told the court that he would have liked to plead not guilty but opted to make the "wise [decision] because [he has] children" does not mean that his guilty plea was coerced. "All pleas of guilty are the result of some pressures or influences on the mind of the defendant." United States v. Buckles, 843 F.2d 469, 472 (11th Cir. 1988) (quotation marks omitted). And the fact that Desenclos struggled to understand the concept of vicarious conspiracy liability does not mean that his guilty plea was uninformed. To ensure that Desenclos understood the charges against him, the court called a recess and allowed him to confer with his attorney. After that recess, Desenclos confirmed that he did "in fact[] do what the Government [said] that [he] did" and pleaded guilty. The court did not clearly err in accepting his plea.

## II.

In addition to contending that the district court erroneously accepted his guilty plea, Desenclos contends that the court erroneously denied his motion to withdraw it. We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. See United States v. Izquierdo, 448 F.3d 1269, 1276 (11th Cir. 2006). A district court abuses its discretion in denying a motion to withdraw a guilty plea where it acts arbitrarily or unreasonably, fails to apply proper legal standards, fails to follow proper procedures in making its determination, or makes clearly erroneous findings of fact. See id. We consider

4

the plea colloquy "as a whole" when determining whether the court abused its discretion.  United States v. Siegel, 102 F.3d 477, 480 (11th Cir. 1996).

After a district court accepts a defendant's guilty plea but before it sentences him, a defendant may withdraw his guilty plea if he "can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  To determine if a defendant has met his burden, a district court looks at "the totality of the circumstances surrounding the plea," including:  "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea."  Buckles, 843 F.2d at 471–72 (citation omitted).

Desenclos argues that the district court abused its discretion in denying his motion to withdraw his guilty plea for two reasons.  First, he argues that the court clearly erred in finding that his guilty plea was knowing and voluntary.  Second, he argues that the court improperly applied Buckles because it did not consider "whether close assistance of counsel was available" to him.  Neither of those arguments has merit.  The first one fails for the reasons we have already discussed.  As for the second one, Desenclos did claim in his motion to withdraw his guilty plea that "no one ever asked him about evidence that would exonerate him," and the court did not address that claim in its order denying his motion.  Nonetheless,

5

any error on the court's part was harmless because the record of Desenclos' plea colloquy belies any claim that he did not have the "close assistance of counsel" when pleading guilty.  Desenclos indicated at his plea colloquy that he was "satisfied with the representation and advice" that his attorney had given to him, and when the court asked him if "there [was] anything about [his attorney's] representation . . . that [he was] not completely satisfied with," Desenclos answered, "Not at all."  Desenclos also indicated that he had "carefully read . . . and discuss[ed]" his plea agreement with his attorney, and even added that he had told his attorney exactly "what [he] was willing to plead guilty to."  Finally, when Desenclos continued to question how he could be guilty of actions that he did not personally take, the court allowed him to confer with his attorney to ensure that he understood the nature of the conspiracy charge against him.  After he did that, the court asked him, "Did you, in fact, do what the Government says that you did in this case?"  Desenclos said "[y]es" and pleaded guilty as charged.

Because Desenclos received the close assistance of counsel and entered his guilty plea knowingly and voluntarily, the district court did not abuse its discretion in denying his motion to withdraw it.  See United States v. Gonzalez-Mercado, 808 F.2d 796, 801 (11th Cir. 1987) (concluding that the district court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea where the first two factors of the Buckles test were met, and observing that we need not give

6

"considerable weight" or "particular attention" to the other two factors in that circumstance).

### III.

Having rejected Desenclos' challenges to his convictions, we reach the issue he raises about his sentence. Desenclos contends that the district court erred in holding him accountable for an intended loss of $4 million and imposing the corresponding 18-level increase to his base offense level. See U.S.S.G. § 2B1.1(b)(1)(J) (providing for an 18-level increase to the defendant's base offense level if the loss from a fraud offense is greater than $2.5 million but less than $7 million); id. § 2B1.1 cmt. n.3(A) (providing that "loss is the greater of actual loss or intended loss"). He argues that $4 million is the entire loss that the conspiracy caused and that, under our precedent, the district court could not hold him accountable for that entire loss without first making individualized findings regarding the scope of the criminal activity that he agreed to jointly undertake. See United States v. Hunter, 323 F.3d 1314, 1319 (11th Cir. 2003). We review for clear error the district court's determination of the loss amount. See United States v. Yeager, 331 F.3d 1216, 1224 (11th Cir. 2003).

The court's purpose in making individualized findings concerning the scope of a defendant's involvement in a conspiracy is to ensure that the loss for which it ultimately holds him accountable was reasonably foreseeable based on his

involvement.  See Hunter, 323 F.3d at 1319.  Accordingly, we have held that a court's failure to make those individualized findings is not grounds for vacating a sentence if the record supports the court's determination that the loss amount was reasonably foreseeable to the defendant.  See United States v. Petrie, 302 F.3d 1280, 1290 (11th Cir. 2002) ("We have previously found that there is no clear error in cases in which the record supports the district court's findings. . . . In this regard, a sentencing court's failure to make individualized findings regarding the scope of the defendant's activity is not grounds for vacating a sentence if the record support[s] the court's determination with respect to the offense conduct, including the imputation of others' unlawful acts to the defendant.").  That is the case here.

Although the court failed to make individual findings regarding the scope of Desenclos' involvement in the conspiracy, the record supports a determination that an intended loss of $4 million was reasonably foreseeable to him.  At Desenclos' sentence hearing, a special agent with the IRS Criminal Investigations Division testified that the company at the heart of the conspiracy, Divine Tax and Financial Services (DTFS), had attempted to receive a little over $4 million in fraudulent refunds from the IRS.  Desenclos incorporated DTFS with co-conspirator Rachelle Beaubrun and served as its director, vice president, and secretary.  He was also a signatory for its checking account.  Titles aside, Desenclos was romantically involved with Beaubrun, and the two often prepared fraudulent returns together in

8

the apartment they shared.  Because the record shows that the entire loss caused by the conspiracy — including the loss caused by any returns Beaubrun might have prepared and filed alone — was reasonably foreseeable to Desenclos, the district court did not clearly err when it increased his base offense level by 18 levels based on an intended loss of $4 million.

**AFFIRMED.**