**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13745
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ALBERT AYALA,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cr-00052-CEM-RMN-1

_____

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Albert Ayala appeals his sentence of 168 months' imprisonment for possession of a firearm as a convicted felon. We affirm.

## I.

Ayala pleaded guilty to knowingly possessing a firearm as a convicted felon.  He admitted that he possessed a firearm when, as he drove his girlfriend's SUV more than 70 mph on the interstate, the girlfriend fell, leapt, or was pushed out the front passenger door onto the highway.  She was run over by several other vehicles and died at the scene.  Ayala crashed the vehicle at an exit ramp about a third of a mile past where his girlfriend died and fled on foot, leaving behind the firearm and a cell phone.

On appeal, Ayala challenges both the procedural and substantive reasonableness of his sentence.  He argues that his sentence was procedurally unreasonable because the district court relied on clearly erroneous factual findings—including the finding that Ayala contributed to his girlfriend's death.  He also argues that the sentence of 168 months in prison was substantively unreasonable because the upward variance to more than four times the upper end of the Sentencing Guidelines range was not justified under the circumstances.

## II.

We review a district court's sentencing decisions for procedural and substantive reasonableness under a deferential abuse-of-discretion standard, whether the sentence imposed is inside or outside the Guidelines range.  *Gall v. United States*, 552 U.S. 38, 41, 51 (2007); *see United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008).  The abuse-of-discretion standard "allows a range of choice for the district court, so long as that choice does not constitute a clear error

of judgment." *United States v. Riley*, 995 F.3d 1272, 1278 (11th Cir. 2021) (quotation omitted).  We review a district court's findings of fact for clear error.  *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013).  "A fact finding is clearly erroneous when, after reviewing all the evidence, the court is left with the definite and firm conviction that a mistake has been committed."  *Id.* (quotation omitted).

## III.

### A.

We turn first to Ayala's argument that the district court committed procedural error at sentencing.  He contends that the district court's finding that he contributed to the death of his girlfriend, Tequilla Shepherd, was clearly erroneous because it was based on unreliable hearsay and speculation.[1]  We disagree.

"A district court has wide latitude in the kinds of information it may consider in the sentencing decision and may consider hearsay evidence as long as the defendant has an opportunity to refute it and the evidence bears a *minimal indicia* of reliability."  *United States v. Hall*, 965 F.3d 1281, 1294 (11th Cir. 2020) (alterations and emphasis adopted, quotation omitted).  The defendant's own admissions are fair game, and so are undisputed statements in the

---

[1] In his opening brief, Ayala also states without elaboration that the district court "failed to adequately explain the chosen sentence."  He offers no argument to support that statement, which is belied by the district court's lengthy discussion of how several factors influenced its sentencing decision.  We therefore reject this argument without further discussion.

presentence investigation report.  *United States v. Owens*, 96 F.4th 1316, 1321 (11th Cir. 2024); *see* Fed. R. Evid. 802(d)(2).  The court may also make reasonable inferences from the evidence it considers.  *Owens*, 96 F.4th at 1321.

When a defendant challenges one of the factual bases of his sentence in the district court, the government bears the burden of proving the challenged fact by a preponderance of the evidence.  *Philidor*, 717 F.3d at 885.  On appeal, a defendant challenging the district court's reliance on hearsay evidence must show that the evidence was "materially false or unreliable" and "that it actually served as the basis for the sentence."  *Hall*, 965 F.3d at 1294.

Here, the district court determined that Ayala "contributed to Ms. Shepherd exiting the vehicle, whether by pushing her out, whether by a struggle that led to her falling out, or whether from threats from the defendant that caused Ms. Shepherd to leap from the vehicle."  This finding was supported by several items of evidence.

*First*, Ayala admitted that he and Shepherd were arguing just before she went out the passenger door, though he claimed that she jumped out of the SUV after he refused to stop in the middle of the interstate to let her out.

*Second*, chunks of hair—a large brown dreadlock that looked like those Ayala wore in a post-arrest photo, and some shorter black hair—were found in the passenger seat and near the passenger door of the wrecked SUV, supporting an inference that Ayala's

argument with Shepherd became physical before she exited the ve-hicle.

*Third*, two 911 callers indicated that Shepherd was thrown or pushed out of the SUV. One caller who was driving right behind the SUV told the 911 operator that she saw a woman get "thrown out of a car," and that someone "pushed the person out of the car." In a later interview with the investigating officer, the witness said she saw the passenger door open and shut quickly, and something fell out that she thought was a trash bag until she saw the woman's face as she passed. Another 911 caller said that when the person "got kicked out of the car, they didn't seem to be moving."

*Fourth*, Ayala reportedly had a recent history of violence to-ward Shepherd. Only a few weeks before her death, Shepherd's father told the police that Shepherd had come to his house with her head covered in bandages. She told him that Ayala had hit her on the head with a gun until she bled, and then refused to take her to the hospital to have her injuries treated. The father also reported that over the preceding week, Ayala had threatened multiple times to "shoot up" the father's house, to kill him and his wife, and to kill Shepherd.

And *fifth*, Ayala's actions after Shepherd's exit from the SUV indicated a consciousness of guilt. He did not call 911 or otherwise try to help Shepherd; instead, he headed for an exit and ran away on foot after crashing the SUV. After the incident, a relative over-heard Ayala saying that his girlfriend had been killed when he got into a wreck with a tractor-trailer and she flew out the window.

That was a lie, according to the witnesses who called 911, and a different story than the one Ayala later told the police.

Contrary to Ayala's argument, the hearsay evidence considered by the district court bore at least minimal indicia of reliability. The 911 calls are the kind of "contemporaneous report" that "has long been treated as especially reliable." *Navarette v. California*, 572 U.S. 393, 399 (2014); *see* Fed. R. Evid. 803(1)–(2) (providing hearsay exceptions for present sense impressions and excited utterances). The father's statements also were sufficiently reliable for sentencing purposes, even if they would not have been admissible at trial. *See Hall*, 965 F.3d at 1294; *United States v. Magluta*, 418 F.3d 1166, 1184 n.8 (11th Cir. 2005).

The father's description of events to the investigating officer after Shepherd's death was consistent with his documented contemporaneous complaint to the police weeks earlier. And although Shepherd herself told the police she was "fine" and refused to give a statement when they contacted her about her father's complaint, she did not contradict his account or claim that he was mistaken about the source of her injuries. Last, the relative's statement that he overheard Ayala giving a false account of Shepherd's death was corroborated by another detail he provided: he also heard Ayala say that he left a gun and a cell phone behind in the wrecked SUV— information that, at the time, was known only to Ayala and the police. Based on the evidence available to it, the district court did not clearly err in finding that Ayala contributed to Shepherd's fatal exit from her SUV.

24-13745                Opinion of the Court                7

Ayala argues that the district court's factual finding was flawed because it was inconsistent with the accident reconstruction expert's conclusion that it was unlikely Ayala could have opened the passenger door and pushed Shepherd out while driving the SUV. But the court was not required to find the expert's opinion persuasive, and in any event, the expert's testing and conclusion did not foreclose the finding that Ayala contributed to Shepherd's exit from the vehicle. The expert acknowledged that it was possible Ayala could have opened the door and pushed Shepherd out—as the 911 callers reported immediately after witnessing the event—especially if she was unconscious at the time. And the expert did not test for other scenarios the district court considered, such as if Ayala opened the door while Shepherd was leaning against it during a physical altercation or when trying to get away from him, or if Ayala threatened her with the gun and she fell or jumped out while trying to escape.

Ayala also argues that the district court erred by relying in part on complaints that he had attacked or stalked other women in the past. He points out that two petitions for restraining orders—a 2010 petition based on a woman's sworn complaint that he punched, choked, pushed, shot at, and threatened to kill her, and a 2021 petition based on another woman's sworn complaint that he stalked and threatened her—were dismissed because the 2010 complainant failed to show up at a hearing and the 2021 petition did not allege that he had continued stalking, harassing, or threatening the woman after being asked to stop. And he notes that when he was arrested for "Aggravated Stalking with a Credible Threat" in 2017

and "Stalking (Dating Violence)" in 2021, the state attorney declined to prosecute either case.

Ayala's argument that the district court should not have considered these allegations and arrests is foreclosed by the relevant statutory framework and our precedents. Sentencing courts are required to consider a defendant's history and characteristics, as well as his potential future dangerousness, and they are permitted to consider uncharged or even acquitted conduct as part of that review. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C); *United States v. Rushin*, 844 F.3d 933, 942 (11th Cir. 2016). And when it comes to the defendant's "background, character, and conduct," the scope of information the district court can consider at sentencing is unlimited. 18 U.S.C. § 3661.

In short, the district court committed no significant procedural error in determining Ayala's sentence. Its factual findings were based on reliable and specific evidence and were not clearly erroneous. And the court correctly calculated the advisory Guidelines range, heard argument from both parties regarding the appropriate sentence, considered the statutory sentencing factors, and adequately explained its reasoning. *See Gall*, 552 U.S. at 53.

**B.**

Next, Ayala argues that his sentence is substantively unreasonable because the district court essentially disregarded the

Guidelines range and unreasonably weighed other statutory sentencing factors.[2]  Again, we disagree.

A district court abuses its considerable discretion and imposes a substantively unreasonable sentence only when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors."  *United States v. Oudomsine*, 57 F.4th 1262, 1266 (11th Cir. 2023) (quotation omitted).  Sentencing courts are required to consider the Guidelines range, but that range is only one of many statutory sentencing factors they must take into account. *See* 18 U.S.C. § 3553(a); *United States v. Rosales-Bruno*, 789 F.3d 1249, 1258 (11th Cir. 2015).  A sentence outside the Guidelines range is not presumptively unreasonable, though a "major variance does require a more significant justification than a minor one."  *United*

---

[2] The sentencing factors enumerated in 18 U.S.C. § 3553(a) are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to effectively provide correctional treatment such as training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) relevant policy statements by the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

*States v. Curtin*, 78 F.4th 1299, 1311 (11th Cir. 2023) (quotation omitted); *see Gall*, 552 U.S. at 51.

On appeal, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. "Even where the degree of the variance is substantial, we will not reverse a sentence unless we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Overstreet*, 713 F.3d 627, 636 (11th Cir. 2013) (quotation omitted).

Here, the district court varied upward to more than 10 years above the Guidelines range of 30 to 37 months, only 12 months below the statutory maximum sentence. This steep upward variance was based primarily on its determination that Ayala contributed to Shepherd's death while in possession of the firearm and then fled, "leaving his girlfriend to be torn to shreds by oncoming traffic" and endangering and traumatizing other drivers. The court explained that the seriousness of and appropriate punishment for a felon-in-possession offense varied widely depending on the circumstances, and the circumstances surrounding Ayala's offense formed "without a doubt, the worst version of possession of a firearm by a convicted felon" it had ever seen. Thus, the court considered and weighed heavily the circumstances and seriousness of the offense,

and the need to provide just punishment within the broad statutory sentencing range. *See* 18 U.S.C. § 3553(a)(1)–(2)(A).

The court also discussed Ayala's history and the need to protect the public from him. *See id.* § 3553(a)(1), (2)(C). It noted his "decade long history of committing crimes and victimizing people," as shown by the ten felony convictions and numerous other criminal charges, accusations of domestic violence, arrests, and probation violations listed in the presentence investigation report. It emphasized that Ayala "triggered nearly every internal alarm" for dangerousness, so he "should be kept away from the law-abiding as long as possible."

These factors provide a sufficiently compelling justification for the court's upward departure. The court was required to—and did—consider the Guidelines range along with the other statutory sentencing factors. But "[n]othing requires a sentencing court to give the advisory guidelines range as much weight as it gives any other § 3553(a) factor or combination of factors." *Rosales-Bruno*, 789 F.3d at 1259. We cannot say that the district court committed a clear error in judgment by weighing the highly unusual and dramatic circumstances of the offense so heavily, or that the 168-month sentence lies outside the range of reasonable sentences dictated by the § 3553(a) factors and the facts of the case. The sentence is therefore substantively reasonable. *See Overstreet*, 713 F.3d at 636.

## IV.

Ayala's 168-month sentence is procedurally and substantively reasonable.  We therefore affirm.

**AFFIRMED.**