[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12950

_____

D.C. Docket No. 8:18-cr-00106-SDM-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL STEPHEN MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 14, 2020)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and LUCK, Circuit Judges.

LUCK, Circuit Judge:

The sentencing guidelines increase a defendant's advisory guideline range if he unlawfully possessed a firearm and he did so "with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  The issue here is whether the section 2K2.1(b)(6)(B) enhancement applies if the defendant plans to swap his firearm for drugs in a future, but-hasn't-happened-yet, trade.  We conclude that it does if the government proves by a preponderance of the evidence that the defendant knew, intended, or had reason to believe (rather than hoped, wished, or dreamed) the gun was going to be used to buy drugs, and the sale would have (rather than may or might have) happened but for the defendant's arrest or something else getting in the way. Because the district court found that defendant Michael Stephen Martinez intended that his stolen shotgun would be bartered for a pound of dope, and that finding was supported by the evidence and was not clearly erroneous, we affirm the section 2K2.1(b)(6)(B) enhancement to Martinez's advisory guideline range.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On January 27, 2018, deputies with the Polk County Sheriff's Office pulled over a car because it had an illegible tag.  The deputies approached the car and spoke to the driver, Martinez, who admitted that he was driving with a suspended license. Inside the car were Martinez's girlfriend, who was in the front passenger seat, and his infant son, who was in a car seat in the back.  When the deputies asked Martinez

2

whether he would consent to a search of the car, Martinez deferred to his girlfriend because she was the owner.  Martinez's girlfriend agreed to the search.  The deputies found a backpack on the passenger floorboard containing a digital scale and several baggies; a pipe with methamphetamine residue in the driver's side door compartment; brass knuckles on the driver's side floorboard; and a backpack on the back seat (next to his son's car seat) containing a detached twenty-gauge shotgun barrel and handle stock.  In Martinez's pockets, deputies found plastic baggies with meth.  After the deputies read him his <u>Miranda</u> rights, Martinez admitted that everything inside the car belonged to him; he knew the shotgun was stolen; and he knew the serial numbers had been obliterated.  Martinez later admitted he planned to sell the shotgun for a pound of "dope" because he needed money to pay his bills and buy drugs for personal use.

Before the traffic stop, Martinez had four prior convictions in Florida for: robbery; grand theft; possession of meth; and another possession of meth.  Having admitted the stolen shotgun was his, Martinez was indicted for possessing a firearm as a convicted felon.  He pleaded guilty without a plea agreement.

The probation office prepared a presentence investigation report.  The probation office started with a base offense level of twenty because Martinez possessed the stolen shotgun "subsequent to sustaining one felony conviction" for a crime of violence:  robbery.  U.S.S.G. § 2K2.1(a)(4)(A).  The probation office then

3

increased Martinez's offense level:  by four, because the shotgun's serial number was obliterated, id. § 2K2.1(b)(4)(B); and by another four, because Martinez had reason to believe the shotgun would be used or possessed in connection with another felony offense, id. § 2K2.1(b)(6)(B).  With a three-level reduction for accepting responsibility, id. § 3E1.1(a) & (b), Martinez's total offense level was twenty-five and his criminal history category was V, for an advisory guideline range of 100 to 120 months.  See id. § 5G1.1(c)(1).

Martinez had two objections to the presentence investigation report.  He first objected that his robbery conviction was not a "crime of violence" under section 2K2.1(a)(4)(A).  The district court overruled the objection because, as Martinez conceded, we held in United States v. Lockley, 632 F.3d 1238 (11th Cir. 2011), and United States v. Dixon, 718 F. App'x 924 (11th Cir. 2018), that a Florida robbery conviction qualified as a crime of violence.

Martinez also objected that he did not use or possess the shotgun in connection with another felony offense under section 2K2.1(b)(6)(B).  The district court overruled the objection based on three findings of fact:  (1) Martinez's plan to sell the stolen shotgun for the pound of dope was a drug trafficking offense; (2) the stolen shotgun had the potential of facilitating the pound-of-dope sale; and (3) the stolen shotgun was in close proximity to the drug paraphernalia, the scale.  After hearing from the parties and considering the section 3553(a) factors, the district court

4

sentenced Martinez below the advisory guideline range to seventy-eight months' imprisonment. Martinez appeals his sentence.

## STANDARD OF REVIEW

"We review a district court's interpretation of the [s]entencing [g]uidelines and application of the [g]uidelines to the facts de novo, and we review the district court's findings of fact for clear error." United States v. Dimitrovski, 782 F.3d 622, 628 (11th Cir. 2015) (citing United States v. Barrington, 648 F.3d 1178, 1194–95 (11th Cir. 2011)). "A district court's determination that a defendant possessed a gun 'in connection with' another felony offense is a finding of fact that we review for clear error." United States v. Bishop, 940 F.3d 1242, 1250 (11th Cir. 2019). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Barrington, 648 F.3d at 1195 (quoting United States v. Ellisor, 522 F.3d 1255, 1273 n.25 (11th Cir. 2008)). "Although review for clear error is deferential, a finding of fact must be supported by substantial evidence." United States v. Robertson, 493 F.3d 1322, 1330 (11th Cir. 2007).

## DISCUSSION

Section 2K2.1(b)(6)(B) increases the defendant's offense level by four if he unlawfully possessed a firearm and he did so "with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony

5

offense." U.S.S.G. § 2K2.1(b)(6)(B). Martinez's appeal focuses on two elements of section 2K2.1(b)(6)(B): whether the district court clearly erred in finding that the planned shotgun-for-dope sale was "another felony offense" of drug trafficking; and whether the district court clearly erred in finding that the shotgun-for-dope trade was "in connection with" the drug trafficking offense.[1] So will we.

"Another Felony Offense"

The district court found that Martinez's plan to sell his stolen shotgun for a pound of dope was "another felony offense" of drug trafficking. Martinez contends there was no evidence he was engaged in a drug trafficking offense. While he concedes "that he intended to use the gun to purchase a quantity of drugs," Martinez argues "there was no evidence presented that he intended to later sell those drugs."

---

[1] Martinez also argued that the district court erred in setting his base offense level at twenty because his prior Florida robbery conviction was not a "crime of violence" under section 2K2.1(a)(4)(A), which sets a defendant's base offense level at twenty if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." Shortly after Martinez filed his initial brief, the Supreme Court decided Stokeling v. United States, 139 S. Ct. 544 (2019). In his reply brief, Martinez "recognizes the Supreme Court's recent decision in Stokeling[], in which the Supreme Court held that Florida robbery qualified as a 'violent felony' under the Armed Career Criminal Act's elements clause." Although Stokeling found Florida robbery to be a violent felony under the Armed Career Criminal Act's elements clause, "[b]ecause the elements clause definition of 'crime of violence' . . . in the [g]uidelines and the elements clause definition of 'violent felony' under the Armed Career Criminal Act ('ACCA') are virtually identical, this Court looks to the Supreme Court's and our own decisions applying the ACCA for guidance in considering whether an offense qualifies as a crime of violence under the [g]uidelines, and vice versa." United States v. Ochoa, 941 F.3d 1074, 1107 (11th Cir. 2019). We do too and reject Martinez's crime-of-violence argument based on Stokeling.

The guidelines define a "drug trafficking offense" as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2 cmt. n.2.[2] There was plenty of evidence Martinez intended to distribute the dope he was planning to buy.

After the traffic stop, and the digital scale, pipe, baggies, meth residue, brass knuckles, and stolen shotgun were found, Martinez waived his Miranda rights and admitted to the officers: "the items found in the vehicle belonged to him"; "he knew the shotgun was stolen"; "he was also aware that the serial number had been obliterated"; and "he planned to sell the shotgun for a pound of 'dope.'" The presentence investigation report also included Martinez's statement that he committed this offense "because he needed money to pay for bills and his drug use."

---

[2] "Drug trafficking offense" is defined in section 2L1.2. Although section 2K2.1 does not define "drug trafficking offense," we've said that "[w]here the same language appears in two guidelines, it is generally presumed that the language bears the same meaning in both. . . . [W]here two sentencing guidelines are worded identically, absent any distinctions or clarifying words noted in the Commentary, they should be interpreted and applied in the same manner." United States v. Perez, 366 F.3d 1178, 1182 (11th Cir. 2004) (citations omitted); see also United States v. Gordillo, 920 F.3d 1292, 1299 (11th Cir. 2019) (same). Section 2K2.1 does not draw any distinctions or use clarifying words, and Martinez has not pointed us to any, to distinguish "drug trafficking offense" as used in the two guidelines. So, as we did in Perez and Gordillo, we will read the same terms the same way.

Personal drug use was one reason Martinez planned to sell the stolen shotgun for a pound of dope. But it wasn't the only reason. Martinez also needed money to pay his bills. And the only way to make money from the pound of dope was to traffic it to others rather than smoke, snort, or shoot it himself.

The weight of the dope Martinez was fixing to buy—a pound—is also evidence that it was intended for distribution rather than personal use. A pound, whether it's cocaine, heroin, marijuana, or methamphetamine, is more than personal users typically buy. Because of how much a pound costs and how difficult it is to sell hand-to-hand, you don't see users buying one-pound baggies on street corners. We've held with even lower weights that there was sufficient evidence to support convictions for possessing controlled substances with the intent to distribute. See, e.g., United States v. Mercer, 541 F.3d 1070, 1073 n.3, 1076 (11th Cir. 2008) (finding that the amount of meth found in the defendant's hotel room (15.6 grams) was a quantity that supported his conviction for possession of meth with intent to distribute); United States v. Poole, 878 F.2d 1389, 1391–92 (11th Cir. 1989) (concluding that the defendant's possession of 148.775 grams of cocaine supported her conviction for possession of cocaine with intent to distribute because that crime "can be proven circumstantially from, among other things, the quantity of cocaine"). The same analysis would apply to Martinez's pound of dope.

8

In addition to Martinez's statement and the weight of the dope, the other items found in the car were evidence that he intended to distribute the pound of dope. Martinez had a digital scale and plastic baggies in the backpack on the passenger floorboard. He had more plastic baggies in his pockets, and those tested positive for meth residue. We've held that similar drug paraphernalia—scales and baggies with residue—was evidence that a defendant intended to distribute his drugs rather than smoke or inject it himself. See, e.g., Mercer, 541 F.3d at 1076 (concluding that the defendant's possession of "a large number of plastic jeweler's bags" supported his conviction for possession of meth with intent to distribute); United States v. Gamboa, 166 F.3d 1327, 1332 (11th Cir. 1999) (determining that the presence of a triple beam scale, firearms, drugs, and other drug paraphernalia at a home where the defendant spent the day sufficiently supported his conviction for conspiracy to possess meth with the intent to distribute); Poole, 878 F.2d at 1392 ("Intent to distribute can be proven circumstantially from, among other things, . . . the existence of implements such as scales commonly used in connection with the distribution of cocaine."). Based on Martinez's statement that he was trading the stolen shotgun for dope so he could make money, the weight of the dope that he was buying, and his having the tools of the drug trade—scales and baggies—the district court did not clearly err in finding that Martinez intended to possess the shotgun for a drug trafficking offense (distributing dope).

9

Martinez also argues that the stolen-shotgun-for-dope deal was not "another felony offense" under section 2K2.1(b)(6)(B) because it was only a someday intention to do something in the future. He couldn't have committed the "drug trafficking offense," the argument goes, because the drug deal hadn't happened yet.

We disagree because section 2K2.1(b)(6)(B) applies even if a felon-in-possession defendant had "knowledge, intent, or reason to believe" the firearm "<u>would be</u>," but wasn't actually, "used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B) (emphasis added). The guidelines use the phrase "would be" to indicate the "future tense." <u>See</u> <u>United States v. Mitchell</u>, 166 F.3d 748, 753 n.19 (5th Cir. 1999) (calling this language the "future tense prong" of section 2K2.1(b)(6)(B)). To emphasize the point, the commentary says that section 2K2.1(b)(6)(B) applies "if the firearm . . . facilitated, <u>or had the potential of facilitating</u>, another felony offense." U.S.S.G. § 2K2.1 cmt. n.14(A) (emphasis added). "Potential" means "having the capacity or a strong possibility for developing into a state of actuality." <u>Webster's Third New International Dictionary</u> 1775 (Merriam-Webster 1986). The clear language of the guideline and its commentary tells us that section 2K2.1(b)(6)(B) applies to "would be" and "potential" felonies. The enhancement is triggered if the government proves by a preponderance of the evidence that the defendant knew, intended, or had reason to believe his gun was going to be used or possessed in connection with another felony

10

offense, and the second felony would have happened but for the defendant's arrest or something else getting in the way.

Of course, Martinez is right that not every far-flung fantasy to commit a future felony will result in a section 2K2.1(b)(6)(B) enhancement. If Martinez had the detached shotgun tucked away under the bed at his Bubbe's house, and the only evidence was his statement that he was wishing and hoping and thinking about swapping the gun for drugs the Purim after next, then we'd have trouble finding evidence supporting the enhancement. But these were not the facts the district court had. Martinez's intent was not some pie-in-the-sky summit two years in the future.

The district court had evidence that Martinez's stolen shotgun "would be" used to buy a pound of dope because he had the gun in his car packed up and ready to go instead of hidden in some corner of his home. Martinez had the tools to sell the pound of dope. He had baggies (with residue), a pipe, and a digital scale. He admitted that his plan was to sell the gun for a pound of dope to pay his bills and feed his drug habit. All he needed was the supply. Given this evidence, we see no clear error in the district court's finding that Martinez intended and had reason to believe the gun would be used for a drug trafficking offense.

### "In Connection With"

Section 2K2.1(b)(6)(B) also requires that the defendant have reason to believe the firearm would be used or possessed "in connection with" another felony offense.

11

As to the "in connection with" element, Martinez contends that "the record does not support a finding that the gun in any way facilitated his possession of drugs for personal use." "There is no suggestion in the record," he says, that he "possessed the shotgun for the purposes of emboldening him to engage in drug trafficking or using the shotgun to protect his drugs." The "evidence presented by the government," Martinez concludes, "did not demonstrate how the firearm did, or could potentially, facilitate the offense of simple drug possession or a drug trafficking offense."

There are two ways, the guidelines commentary tells us, to show that a firearm was used or possessed "in connection with" a drug trafficking offense. Way one: section 2K2.1(b)(6)(B) applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1 cmt. n.14(A). Way two: "in the case of a drug trafficking offense," the enhancement applies if "a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." Id. n.14(B)(ii). Here, the district court found that the stolen shotgun was meant to facilitate Martinez's pound-of-dope sale and was in close proximity to drug paraphernalia (the scale and baggies). Neither finding is clearly erroneous.

Facilitating or having the potential to facilitate. The facilitate-or-potential-of-facilitating language was added to the section 2K2.1(b)(6)(B) commentary in 2006 to define the "in connection with" element. U.S.S.G. App. C, Amend. 691 (Nov. 1,

12

2006).  The commentary, the sentencing commission explained, "adopt[ed] the language from Smith v. United States, 508 U.S. 223 (1993) . . . that [section 2K2.1(b)(6)] appl[ies] if the firearm facilitated, or had the potential of facilitating, another felony offense."  Id.

In Smith, the defendant offered to sell his automatic firearm and silencer to an undercover officer for two ounces of cocaine.  508 U.S. at 226.  The defendant was arrested and indicted for two drug trafficking crimes, and the government alleged that he "knowingly used the [firearm] and its silencer during and in relation to a drug trafficking crime," in violation of 18 U.S.C. § 924(c)(1).[3]  Id.  Section 924(c)(1) imposed mandatory penalties "if the defendant, 'during and in relation to any crime of violence or drug trafficking crime[,] uses or carries a firearm.'"  Id. at 227 (alteration in original).  The defendant argued that section 924(c)(1) did "not extend to defendants who use a firearm solely as a medium of exchange or for barter."  Id.  The Supreme Court disagreed.  The Court explained that "during and in relation to"

---

[3] At the time, section 924(c)(1) provided:

> Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a machinegun, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years.

18 U.S.C. § 924(c)(1) (1988).  It has since been amended.

13

meant "the gun at least must facilitate, or have the potential of facilitating, the drug trafficking offense." Id. at 238 (internal quotation marks and alteration omitted). "[H]ere," the Court concluded, "the gun was an integral part of the transaction." Id. (internal quotation marks and ellipses omitted). "Without it, the deal would not have been possible." Id.

In United States v. Carillo-Ayala, 713 F.3d 82 (11th Cir. 2013), we used Smith and the commentary to section 2K2.1(b)(6)(B) to define "in connection with" as used in another part of the sentencing guidelines, section 5C1.2(a)(2). Id. at 85, 93. Section 5C1.2 is the safety valve guideline. Id. at 88. It requires a district court to sentence a defendant convicted of certain drug crimes "without regard to the mandatory minimum specified by the statute," id. (citing 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2), but only if the defendant meets the safety valve criteria, including that the defendant "did not . . . possess a firearm or other dangerous weapon . . . in connection with the [drug] offense," id. (quoting 18 U.S.C. § 3553(f)(2) and U.S.S.G. § 5C1.2(a)(2)). In discussing the section 5C1.2 "in connection with" language, we said:

> Where a defendant engages in a drug offense and also possesses a firearm, but the firearm is not in proximity to drugs or paraphernalia, the Commission's application note in § 2K2.1 is similarly helpful. The Commission "adopt[ed] the language from Smith[]," to define what constitutes use or possession of a firearm "in connection with" a drug offense. Section 2K2.1 cmt. historical notes (2006). Smith was issued in the term immediately preceding Congress's amendment of 18 U.S.C. § 3553, when it adopted the safety valve provision. Smith was the

14

Supreme Court's latest word on the interplay of guns and drugs when the statutory language of the safety valve was formulated.

Id. at 93. The Carillo-Ayala court then went through Smith and our cases applying section 2K2.1(b)(6)(B) and concluded: "Sale of a firearm in exchange for drugs facilitates a drug offense." Id. at 96. "We hold that, under § 5C1.2(a)(2), a defendant possesses a firearm in connection with a drug offense if the firearm is in proximity to drugs or if the firearm facilitates the drug offense . . . by serving as an integral part of a drug transaction as in a barter situation . . . ." Id. (citations omitted).

We read "facilitate, or have the potential of facilitating" in the commentary to section 2K2.1(b)(6)(B) the same way the Supreme Court used it in Smith, and the same way we used it in Carillo-Ayala, to include gun-for-drugs barters and transactions. The sentencing commission borrowed "facilitate, or have the potential of facilitating" from Smith to define section 2K2.1(b)(6)(B)'s "in connection with" element. The borrowing matters because "[w]hen a statutory term is 'obviously transplanted from another legal source,' it 'brings the old soil with it.'" Taggart v. Lorenzen, 139 S. Ct. 1795, 1801 (2019) (quoting Hall v. Hall, 138 S. Ct. 1118, 1128 (2018)). The sentencing commission took Smith's soil, including the Supreme Court's conclusion that the gun-for-drugs exchange facilitated and had the potential of facilitating the drug crime, and mixed it in with the definitional roots of section 2K2.1(b)(6)(B).

15

Also, as we noted earlier, where two guideline provisions use the same language, we presume they have the same meaning and generally interpret them the same way. Gordillo, 920 F.3d at 1299; Perez, 366 F.3d at 1182. In Carillo-Ayala, we read the safety valve's "in connection with" requirement to mean "the firearm facilitates the drug offense . . . by serving as an integral part of a drug transaction as in a barter situation." 713 F.3d at 96 (citation omitted). Critically, Carillo-Ayala used the section 2K2.1(b)(6)(B) commentary and case law to reach that conclusion. We see no reason to give the "in connection with" requirement in section 2K2.1(b)(6)(B) a different meaning.

Here, the district court did not clearly err in finding that Martinez's stolen shotgun had the potential of facilitating the pound-of-dope sale. As in Smith, Martinez had the stolen shotgun so he could barter it for a pound of dope. After his arrest, Martinez told law enforcement officers "that he planned to sell the shotgun for a pound of 'dope.'" Martinez admitted he possessed the firearm illegally "because he needed money to pay for bills and his drug use." Martinez had the tools ready for his shotgun-for-pound-of-dope deal. He had an illicit gun to sell that was disassembled (so it could not be used for personal protection), stolen, and had the serial numbers removed. Martinez was ready for the dope with a digital scale and several baggies; a pipe for smoking; and brass knuckles on the driver's side floorboard. The shotgun did more than "merely facilitate[] the offense." Smith, 508

16

U.S. at 238.  It "was an integral part of the transaction."  Id. (quotation omitted).  "Without it, the deal would not have been possible."  Id.

Close proximity.  The "in connection with" element is relaxed somewhat if the other felony offense is a drug trafficking offense.  Section 2K2.1(b)(6)(B) applies, the guidelines commentary says, "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia."  U.S.S.G. § 2K2.1 cmt. n.14(B)(ii).  The commentary explains that the less-rigorous "close proximity" standard "is warranted because the presence of the firearm has the potential of facilitating another felony offense."  Id.; see also Bishop, 940 F.3d at 1250 ("Application Note 14(B) rationalizes the automatic imposition of the enhancement, explaining that the presence of the firearm has the potential of facilitating another felony offense in drug trafficking cases." (internal quotation marks omitted)).  "'[C]lose proximity' was intended to be a proxy for the potential of the gun to facilitate the drug crime.  'A firearm found in close proximity to drugs or drug-related items simply 'has'— without any requirement for additional evidence—the potential to facilitate the drug offense.'"  Gordillo, 920 F.3d at 1298–99 (quoting Carillo-Ayala, 713 F.3d at 92).  The special rule for "drug trafficking offenses" is a commonsense recognition that "drugs and guns are a dangerous combination," Smith, 508 U.S. at 240, and they are especially dangerous when they are in close proximity.

17

In Gordillo, during a search of the defendant's home, law enforcement officers found an AR-15 rifle locked and inside a closed hard case in the defendant's small bedroom. 920 F.3d at 1294–95. The officers "also found four 30-round magazines in a gun-range bag in the small master bedroom some ten feet from the gun case." Id. at 1295. The defendant pleaded guilty to possessing a firearm and ammunition as an alien unlawfully in the United States. Id. at 1294. At sentencing, over his objection, the district court set the defendant's offense level at twenty because the offense involved a semiautomatic firearm capable of accepting a large capacity magazine. Id. at 1295–96. "[S]emiautomatic firearm that is capable of accepting a large capacity magazine" is a term of art defined in the commentary as "a semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense . . . a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm." Id. at 1297 (emphasis added) (quoting U.S.S.G. § 2K2.1 cmt. n.2(B)).

The Gordillo court said the "only question for us to decide . . . is whether a high-capacity magazine in a bag is in 'close proximity' to a locked firearm in a case ten feet away in the same room." Id. We explained that while we've "discussed proximity between firearms and drugs in a number of cases," we "have never explicitly elaborated on its meaning." Id. at 1299. We reviewed: the dictionary definitions of "close" and "proximity"; the history of how the "close proximity"

18

language was added to the guideline commentary (it was added as part of the same amendment to section 2K2.1 as the commentary to subsection (b)(6)(B)); other guideline provisions (including section 2K2.1(b)(6)(B)) that had the same or similar language; and our case law applying similar guidelines (including case law applying section 2K2.(b)(6)(B)). Id. at 1297–1300. "Ultimately," the court concluded, "we think that, as its plain language suggests and as our analysis of proximity in the related cases dealing with guns and drugs indicates, 'close proximity' encompasses both physical distance and accessibility." Id. at 1300.

The Gordillo court drew from the same "close proximity" language in section 2K2.1(b)(6)(B). "The phrase 'close proximity,'" we said, "means the same thing in Application Note 2 (semiautomatic weapons) as it does in Application Note 14 (connection between drugs and guns)." Id. at 1299. "Indeed," we continued, "Application Notes 2 and 14 using the phrase 'close proximity' were added simultaneously, in the 2006 amendments. There is no reason to believe the Sentencing Commission meant anything other than the plain meaning afforded 'close proximity' in both situations." Id.

Having defined the term, the Gordillo court found no error in the district court's conclusion that the AR-15 in the locked case and the thirty-round magazines in the bag ten feet away were in "close proximity." Id. at 1300. "Under a definition of 'close proximity' that accounts for both physical distance and accessibility," we

19

said, "a semiautomatic weapon—even a locked firearm inside a case—is in 'close proximity' to a high-capacity magazine in a bag no more than ten feet away in the same small bedroom. We have little doubt that ten feet is close physical proximity." Id.

We also have little doubt. Martinez's digital scale and baggies were found in one backpack and his stolen shotgun was found in another backpack. The backpacks containing the drug paraphernalia and firearm were in the same car. The two backpacks were no more than the short distance between the floor of the passenger seat and the backseat.

The fact that the stolen shotgun was disassembled did not make the firearm any less accessible to Martinez. A disassembled shotgun is just as much of a firearm as an assembled one under the sentencing guidelines and the felon-in-possession statute. See 18 U.S.C. § 921(a)(3) (a "firearm" is "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" and "the frame or receiver of any such weapon"); U.S.S.G. § 2K2.1 cmt. 1 ("'Firearm' has the meaning given that term in 18 U.S.C. § 921(a)(3)"). As the Gordillo court explained, "the Guidelines are not a safe-storage law." 920 F.3d at 1300. It was enough that the frame and receiver were in the backseat ready to be traded for drugs.

20

The district court had evidence that Martinez, the stolen shotgun, and the baggies and scales were physically near each other in the car and accessible with no more than a reach to the backseat or passenger floorboard. We can find no clear error with the district court's finding that Martinez's stolen shotgun was found in close proximity to drug paraphernalia.

## CONCLUSION

Section 2K2.1(b)(6)(B) applies to defendants who unlawfully possess a firearm and intend that the firearm would be sold for drugs. Because Martinez planned to sell a stolen shotgun for a pound of dope so he could earn money to pay his bills, and he was found driving with the stolen shotgun and paraphernalia he needed to sell the dope, the district court did not err in enhancing Martinez's offense level. We affirm.

**AFFIRMED.**