[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14838
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cr-20030-KMW-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PROSPERO PERFECTO ANCHUN MOLINA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 24, 2021)

Before JORDAN, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Prospero Perfecto Anchundia Molina appeals his 96-month total sentence for conspiracy to possess and possession with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States and conspiracy to operate and embark, and operating and embarking, in a semi-submersible vessel without nationality.  The facts are known to the parties; we do not repeat them here except as necessary to resolve the issue presented.

On appeal, Molina argues (1) that the district court erred by denying his request for a two-level minor-role reduction, and (2) that the district court erred in applying a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm.  After careful review, we affirm.

## I

Molina argues that the district court erred by denying his request for a two-level minor-role reduction because—according to him—he was less culpable than two of the other defendants.  We review a district court's denial of a role reduction for clear error.  *United States v. Bernal-Benitez*, 594 F.3d 1303, 1320 (11th Cir. 2010).  The district court has "considerable discretion in making this fact-intensive determination."  *United States v. Boyd*, 291 F.3d 1274, 1278 (11th Cir. 2002).  The defendant bears the burden of establishing his minor role in the offense by a preponderance of the evidence.  *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016).  A factual finding cannot be clearly erroneous if

the factfinder is choosing between two permissible views of the evidence. *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012). We will not reverse such a finding unless we are left with the "definite and firm conviction that a mistaken has been committed." *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005) (quotation marks omitted).

U.S.S.G. § 3B1.2 provides a two-level reduction based on a defendant's role in the offense if the defendant was a minor participant. U.S.S.G. § 3B1.2. A "minor participant" means a defendant who is "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* § 3B1.2, comment. (n.5).

First, in determining the defendant's role, "the district court must measure the defendant's role against the relevant conduct for which she has been held accountable." *United States v. Rodriguez De Varon*, 175 F.3d 930, 940 (11th Cir. 1999) (*en banc*). "In other words, the district court must assess whether the defendant is a minor or minimal participant in relation to the relevant conduct attributed to the defendant in calculating her base offense level." *Id.* at 941. "However, such an adjustment only makes sense analytically if the defendant can establish that her role was minor as compared to the relevant conduct attributed to her." *Id.* (emphasis omitted). Thus, a defendant is not entitled to a minor-role adjustment when he can point to a broader criminal scheme in which he was a

3

minor participant but for which he was not held accountable. *Id.* In the drug-courier context, the amount of drugs imported is a material consideration in assessing a defendant's role in his relevant conduct. *Id.* at 943.

Second, the district court must measure the defendant's role against the other discernable participants in the relevant conduct. *Id.* at 944–45. However, it is only those participants who were involved in the relevant conduct attributed to the defendant who are relevant to this inquiry. *United States v. Martin*, 803 F.3d 581, 591 (11th Cir. 2015). "Even if a defendant played a lesser role than the other participants, that fact does not entitle her to a role reduction since it is possible that none are minor or minimal participants." *Id.* (quotation marks omitted). In making this inquiry, the district court is to (1) look to other participants only to the extent that they are identifiable or discernible from the evidence and (2) "consider only those participants who were involved in the relevant conduct attributed to the defendant." *De Varon*, 175 F.3d at 944. The district court must consider all the facts probative of a defendant's role in his relevant conduct and evaluate the totality of the circumstances and the facts of the particular case. U.S.S.G. § 3B1.2, comment. (n.3(C)); *United States v. Pierre*, 825 F.3d 1183, 1196 (11th Cir. 2016).

To assist courts with this task, the Guidelines provide a non-exhaustive list of factors, including: (1) the degree to which the defendant understood the scope and structure of the criminal activity; (2) the degree to which the defendant

4

participated in planning or organizing the criminal activity; (3) the degree to which the defendant exercised or influenced the exercise of decisionmaking authority; (4) the nature and extent of the defendant's participation; and (5) the degree to which the defendant stood to benefit. U.S.S.G. § 3B1.2, comment. (n.3(C)). The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. *Id.*

Here, the district court did not clearly err by denying Molina's request for a minor-role reduction because the court made an individualized determination that Molina was not substantially less culpable than the other participants in the conduct and this determination was supported by the record. First, Molina's sentence was based only on the relevant conduct for which he was held accountable—*i.e.*, the 769 kilograms of cocaine seized from the semi-submersible and firearm found on the vessel. So despite Molina's assertions, the relative culpability of the man who recruited him—who may have been involved in a broader conspiracy that led to Molina's arrest but was not one of the individuals held responsible for the cocaine or the firearm—is not relevant for the analysis of a minor-role reduction. *De Varon*, 175 F.3d at 941. And although Molina also asserts that his responsibilities on the boat were minor, he did not point to any evidence in the record to support that assertion. Finally, although Molina argues that he did not have any knowledge of the scheme or any authority to influence the

5

outcome of the mission, he did not provide evidence that any of the other three defendants had more knowledge of the broader scheme or any more decisionmaking authority than he did regarding the offense conduct.

In short, the district court did not clearly err by declining to grant Molina a minor-role reduction because he failed to carry his burden of showing by a preponderance of the evidence that he was substantially less culpable than the other defendants regarding the relevant conduct—*i.e.*, the transportation of the cocaine and the firearm found on the vessel.

## II

Next, Molina contends that the district court erred in applying a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) because—according to Molina—the government did not show that he knowingly and intentionally possessed the firearm at the time of the commission of the drug offense and that it was clearly improbable that the firearm was used in connection with the offense because the firearm was inoperable and useless. We review the district court's factual findings under U.S.S.G. § 2D1.1(b)(1) for clear error and the application of the Sentencing Guidelines to those facts *de novo*. *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006).

The sentencing court applies a two-level enhancement if a defendant's drug offense included the possession of a dangerous weapon, including a firearm.

U.S.S.G. § 2D1.1(b)(1).  The enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), comment. (n.11)).  The enhancement for weapons possession reflects the increased danger of violence when drug traffickers possess weapons.  *Id.*  The government bears the initial burden of showing, by a preponderance of the evidence, that the weapon was present at the site of the charged conduct or that the defendant possessed it during conduct associated with the offense of conviction.  *United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017).  "Firearm" means any weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive.  U.S.S.G. § 1B1.1, comment. (n.1(H)).

The government benefits from a rebuttable presumption that "a firearm, if present—just present, not present in proximity to drugs—is connected with the offense," and the defendant "must disprove a connection with the drug offense to the extent of showing it is clearly improbable they were symbiotic."  *United States v. Carillo-Ayala*, 713 F.3d 82, 90 (11th Cir. 2013) (quotation marks omitted).  We have held that proximity between guns and drugs, without more, is sufficient to meet the government's initial burden under § 2D1.1(b)(1).  *Id.* at 91–92.  The enhancement concerns only possession because § 2D1.1(b)(2) imposes another two-level enhancement if the defendant used, directed, or threatened to use

violence. *Id.* at 90. Conduct that meets the § 2B1.1(b)(1) possession standard will not, in all cases, show a connection between the firearm and the felony offense. *Id.* There is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened, and the firearm's potential use is critical. *George*, 872 F.3d at 1204.

For a § 2D1.1(b)(1) firearms enhancement for co-conspirator possession to be applied to a convicted defendant, the government must prove by a preponderance of the evidence: (1) that the possessor of the firearm was a co-conspirator; (2) that the possession was in furtherance of the conspiracy; (3) that the defendant was a member of the conspiracy at the time of possession; and (4) that the co-conspirator possession was reasonably foreseeable by the defendant. *United States v. Gallo*, 195 F.3d 1278, 1284 (11th Cir. 1999). Noting the frequent and overpowering connection between the use of firearms and narcotics traffic, we have found it is reasonably foreseeable that a co-conspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs. *Pham,* 463 F.3d at 1246. We have further upheld application of the § 2D1.1(b)(1) enhancement even where defendants claim they were unaware of the firearm possession. *Id.* We have observed that it was not clearly improbable that co-conspirators trafficking in lucrative drug deals would feel the need to protect their inventory and proceeds, as well as themselves, while they were engaging in

8

that high-risk activity. *United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005).

To be eligible for safety-valve relief, a defendant must meet five conditions. 18 U.S.C. § 3553(f). One of those conditions is that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." *Id.* § 3553(f)(2). The standard used for § 2D1.1 is not the same as that for the safety valve. *See Carillo-Ayala*, 713 F.3d at 90 (explaining how the "safety valve works differently" from the firearm enhancement under § 2D1.1). Section 2D1.1 operates under the "rebuttable presumption that a firearm, if present . . . is connected with the offense," whereas a defendant is eligible for the safety valve if he can show it was "more than likely he did not" possess the firearm in connection with the offense. *Id.* at 90 (quotation marks omitted). As we have explained, "[w]here 'a firearm was possessed' by the defendant personally, and yet the defendant also seeks the protection of the safety valve, the district court must determine whether the facts of the case show that a 'connection' between the firearm and the offense, though possible, is not probable." *Id.* at 91. In making that determination, district courts look to the proximity of the gun to the drugs, as well as other factors such as "whether the firearm is loaded, or inside a locked container." *Id.* at 92.

9

We have held that the fact that a gun was disassembled did not make it less accessible to a defendant when applying the "in connection with" requirement of U.S.S.G. § 2K2.1(b)(6)(B), noting that a disassembled shotgun is just as much of a firearm as an assembled one under the sentencing guidelines. *United States v. Martinez*, 964 F.3d 1329, 1340 (11th Cir. 2020).

In *United States v. Rhind*, where two defendants concealed disassembled firearms in their vehicle as they traveled through the Gulf States using counterfeit currency, we concluded that their continued retention of the weapons—which easily could have been reassembled and armed for use—showed that they intended to use the firearms if they felt the need to and thus possessed them in connection with the offense.   289 F.3d 690, 695 (11th Cir. 2002) (applying former § 2K2.1(b)(5)).  We held that the firearm does not have to facilitate the underlying offense, and there was no requirement that the firearm be loaded or operable to meet the "in connection with" requirement. *Id.*

Here, the district court did not clearly err by finding that Molina possessed a firearm and applying the two-level enhancement under § 2D1.1(b)(1) because the firearm was located on the same vessel as the drugs and was brought on by a co-conspirator in furtherance of and during the conspiracy, and it was reasonably foreseeable that an individual engaged in drug trafficking would possess a firearm. Further, Molina did not show that it was clearly improbable that the firearm was

10

used in connection with the offense because the evidence did not show that the firearm was inoperable from the beginning of the offense conduct. And in any event, we have held that a disassembled shotgun is just as much of a firearm as an assembled one under the Sentencing Guidelines, and emphasized—in the context of a disassembled firearm—that there is no requirement that the firearm be loaded or operable to meet the "in connection with" requirement. *Martinez*, 964 F.3d at 1340; *Rhind*, 289 F.3d at 695.[1]

**AFFIRMED**.

---

[1] Molina does not argue on appeal that the district court's finding that he met the criteria for safety-valve relief necessarily dictates a finding that he did not possess the firearm under § 2D1.1(b)(1).

11