[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13804

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

GABRIEL BROWN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:23-cr-00007-MTT-CHW-1

_____

Before JORDAN, LUCK, and ED CARNES, Circuit Judges.

PER CURIAM:

In December 2021, someone fired eleven gunshots into Gabriel Brown's house while Brown and some guests were inside. In response Brown jumped out of his chair, grabbed a firearm, went on his front porch, and saw the taillights of a car stopped at an intersection in his manufactured home community. He believed the shooter was in that car so he fired at least four gunshots at it. The car sped away.

As a result of that conduct and the fact that Brown had previously been convicted of several Georgia felony cocaine offenses, the government charged him with possessing a firearm as a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He pleaded guilty to that offense and was sentenced to 70 months imprisonment.

Brown now challenges his conviction and his sentence. He contends that his conviction should be reversed because 18 U.S.C. § 922(g)(1) is unconstitutional. As for his sentence, he argues for the first time on appeal that the district court plainly erred by treating his prior Georgia cocaine convictions as "controlled substance offenses" under U.S.S.G. § 2K2.1(a)(3). He also contends that the court clearly erred by enhancing his sentence under U.S.S.G. § 2K2.1(b)(6)(B) based on its finding that his uncharged conduct of firing gunshots at the car amounted to aggravated assault.

**I.**

*A.*

In December 2021, a grand jury charged Brown with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He pleaded guilty to that crime without a written plea agreement. At his plea hearing, Brown stipulated to the following facts:

> Several minutes before midnight, a car approached [Brown's] residence and someone fired gunshots in the direct[ion] of Brown's living room . . . . Brown leapt up from where he was seated, grabbed a Taurus handgun, stepped out the front door and saw what appeared to him to be the taillights of a Dodge Charger waiting to turn at an intersection in the manufactured home community. Brown fired four or five shots in the direction of the vehicle, then returned to grab a second firearm, an AR pistol. By that time, the Charger had turned left and driven away. . . .

> Brown . . . acknowledged that he knew he was a convicted felon and . . . that three of the firearms [found in his residence] had been at his residence for approximately one year or longer.

Doc. 45 at 9, 10–11.

In response to the shooting one of Brown's guests called 911, which dispatched an ambulance and law enforcement officers to the house. Brown admitted to one of the officers that he was a convicted felon, and he turned over some firearms to the officers.

The firearms that had been in Brown's immediate possession included one loaded Taurus 9mm caliber semi-automatic pistol (the one he had used to fire shots at the car) and two fully loaded semi-automatic pistols with rounds in the chambers. A few hours later, law enforcement entered the house with a search warrant and seized ammunition and a fourth semi-automatic pistol. Law enforcement also recovered eleven shell casings from the road, along with pieces of red plastic taillight. Officers found four shell casings on Brown's front porch where he had stood and shot at the car. In a later interview with law enforcement, Brown admitted that he and his guests were drinking alcohol and smoking marijuana when the shooting occurred, and that he had also been using cocaine.

*B.*

The Presentence Investigation Report (PSR) assigned Brown a base offense level of 22 because: (1) he had possessed a semiautomatic firearm capable of accepting a large capacity magazine, and (2) he had at least one prior "controlled substance offense." *See* U.S.S.G. § 2K2.1(a)(3). The PSR counted three prior "controlled substance offenses." In 2007, Brown was convicted in Georgia state court of possession of cocaine and possession of less than one ounce of marijuana. In 2009, he was convicted in Georgia state court for selling cocaine. And later in 2009, Brown was again convicted in Georgia state court for selling cocaine.

The PSR also applied a four-level enhancement because Brown had possessed the firearms in connection with other felony offenses, which, according to the PSR, included the uncharged

23-13804                Opinion of the Court                5

aggravated assault of firing four or five shots at the car in the inter-section.  *See id.* § 2K2.1(b)(6)(B).

Brown's total offense level was 25.[1]  His criminal history cat-egory was III.  The PSR calculated his guidelines range as 70 to 87 months.  His statutory maximum term of imprisonment was ten years.

Brown did not object to the finding that he had prior "con-trolled substance offenses" under § 2K2.1(a)(3).  He did object to the four-level enhancement for possession of a firearm in connec-tion with another felony offense under § 2K2.1(b)(6)(B).  Brown ad-mitted that he shot at the car at least four times but argued that it was in self-defense.  He explained that when he fired the shots he did not know how many people were shooting at his house, how many guns were involved, and whether there were people on his property.  Brown was not charged with aggravated assault for his actions that night.  But he contended if he had been indicted for aggravated assault in state court, he would have had an "absolute defense" of self-defense.

The district court concluded that the four-level enhance-ment under § 2K2.1(b)(6)(B) applied.  The court found that, accord-ing to the evidence, "there [was] no indication that [Brown] saw the

---

[1] A two-level enhancement was applied under § 2K2.1(b)(1)(A) because the of-fense involved at least three firearms and a three-level reduction because Brown had accepted responsibility.  Those guidelines calculations are unchal-lenged.

car when shots were fired" into his house.    Nonetheless, Brown "grabbed his weapon, went outside, and shot the first car he saw."  The court accepted that Brown believed that the people who shot into his house were in the car, but stated: "[W]e don't know that.  And in any event, the car was at a — really off the premises and was heading away from Mr. Brown and was at an intersection."

The court concluded that Brown had committed aggravated assault because it found that there was no imminent threat to Brown or his guests when the car was sitting at the intersection facing away from the house.  Also, based on the stipulated facts, the court stated, "while Mr. Brown's inference might have [been] thought to have been reasonable, you could argue that if the shots were fired from the Dodge Charger, and the Dodge Charger was fleeing, it wouldn't be waiting at an intersection to turn.  It would be moving away as quickly as possible."  Based on all those facts, the court found that Brown had not acted in self-defense, and overruled Brown's objection to the § 2K2.1(b)(6)(B) enhancement.

The court accepted the PSR's calculation of a 70 to 87 month guidelines range and sentenced Brown to the low end of that range, 70 months imprisonment to be followed by 3 years of supervised release.

## II.

### A.

We first address Brown's challenge to his conviction.  He contends that § 922(g)(1) violates the Second Amendment.  In *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), we held that §

922(g)(1) is constitutional under the Second Amendment. *See id*. at 770–71. Neither *United States v. Rahimi*, 602 U.S. 680 (2024), nor *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), abrogated that decision. *See United States v. Dubois*, 139 F.4th 887, 888–89 (11th Cir. 2025). Brown's argument that § 922(g)(1) is unconstitutional is therefore foreclosed by our binding decisions in *Dubois* and *Rozier*.

### B.

We next address Brown's challenges to his sentence. He first argues that his 2007 and 2009 Georgia cocaine convictions don't qualify as "controlled substance offenses" under U.S.S.G. § 2K2.1(a)(3), because cocaine no longer fits the definition of a "controlled substance offense" under Georgia law. *See United States v. Bishop*, 940 F.3d 1242, 1253 (11th Cir. 2019). He didn't raise that issue in the district court, meaning that plain error review applies, but his challenge would fail under any standard of review. *See United States v. Chafin*, 808 F.3d 1263, 1268 (11th Cir. 2015).

As Brown concedes, his cocaine convictions were controlled substance offenses under state law at the time of his state convictions. *See* O.C.G.A. § 16-13-26(1)(D) (2007); *id*. (2009). That concession dooms his argument on this issue. Because Georgia state law regulated cocaine as a "controlled substance" at the time of Brown's previous convictions, his convictions qualify as "controlled substance offenses" under the sentencing guidelines. *See United States v. Dubois*, 94 F.4th 1284, 1298, 1300 (11th Cir. 2024), *vacated by* 145 S. Ct. 1041 (2025), and *reinstated by* 139 F.4th 887 (11th Cir. 2025)

(explaining that under U.S.S.G. § 2K2.1(a)(3) we determine whether a drug offense qualifies as a "controlled substance offense" by looking to whether the "substance [was] regulated by state law when the defendant was convicted of the state drug offense, even if it is no longer regulated when the defendant is sentenced for the federal firearm offense").  The district court did not err, much less plainly err, by correctly finding that Brown had previously been convicted of felony "controlled substance offenses."

## C.

Brown's last challenge is to his sentence enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for committing his underlying felon-in-possession offense in connection with another (uncharged) felony offense.  We review *de novo* a district court's interpretation of the sentencing guidelines and its application of the guidelines to the facts, and we review for clear error the district court's findings of fact. *United States v. Martinez*, 964 F.3d 1329, 1333 (11th Cir. 2020). The district court's determination that Brown possessed a gun in connection with another felony offense is a factfinding that we review only for clear error.  *See id.*  And to conclude that finding is clearly erroneous, we must be left with the definite and firm conviction that a mistake was made.  *Id.*

The government has the burden to show by a preponderance of the evidence that the facts warrant a sentencing enhancement. *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015). That standard "simply requires" the district court, acting as the factfinder, "to believe that the existence of a fact is more probable than

its nonexistence." *United States v. Watkins*, 10 F.4th 1179, 1184 (11th Cir. 2021) (quotation marks omitted). "[P]hrased in a slightly different fashion, it is proof that persuades the trier of fact that a proposition is more likely true than not true." *Id.* (quotation marks omitted). "The findings of fact of the sentencing court may be based on . . . facts admitted by a defendant's plea of guilty, undisputed statements in the presentence report, or evidence presented at the sentencing hearing." *United States v. Wilson,* 884 F.2d 1355, 1356 (11th Cir. 1989).

The sentencing guidelines recommend a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The commentary to that guideline states that the enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." *Id.* § 2K2.1, cmt. 14(A). For the purposes of § 2K2.1(b)(6)(B), "[a]nother felony offense" is defined as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* § 2K2.1(b)(6)(B), cmt. 14(C).

The district court relied on Georgia's aggravated assault statute to find that Brown had committed another felony in connection with his felon-in-possession offense. The Georgia aggravated assault statute provides, in relevant part, that a person commits

aggravated assault when he "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." O.C.G.A. § 16-5-21(a)(2). That crime is punishable by no less than 1 year and no more than 20 years imprisonment. *Id.* § 16-5-21(b). Georgia aggravated assault thus qualifies as "[a]nother felony offense" under § 2K2.1(b)(6)(B).

Brown stipulated at his plea hearing and admitted at sentencing that it was undisputed that he shot at least four times at the car stopped in the intersection. That act qualifies as aggravated assault under Georgia law and meets the requirements for § 2K2.1(b)(6)(B) to apply. O.C.G.A. § 16-5-21(a)(2); U.S.S.G. § 2K2.1(b)(6)(B), cmt. 14(C); *Wilson,* 884 F.2d at 1356.

Still, Brown contends that the district court clearly erred because he shot in self-defense at the stationary car that was pointed away from his house. It's true that under Georgia law, "[a] person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's *imminent* use of unlawful force." *Id.* § 16-3-21(a) (emphasis added).

Nevertheless, the court did not clearly err when it found by a preponderance of the evidence that Brown did not reasonably believe that the risk of harm presented by the car was *imminent* when he fired at least four gunshots at it. *Martinez*, 964 F.3d at 1333; *Dimitrovski*, 782 F.3d at 628. The court found that, even if Brown

reasonably believed that the shooter was in the car, the location of the car established that there was no imminent threat to him when he fired his gun. The car was stopped at an intersection. It was facing away from Brown's house. As the court found, it was "heading away from Mr. Brown." *Cf. Gobert v. State*, 311 Ga. 305, 309 (2021) (rejecting a criminal defendant's argument that he acted in self-defense and thus should not have been convicted of felony murder as predicated on aggravated assault when he shot at (and struck one of the passengers of) a car driving away from the defendant, and reasoning: "[the defendant] shot at the car while the three men [inside it] were fleeing, and [no one present was] in any danger or any imminent threat of harm at that point"). The district court didn't clearly err in its factfindings, and it properly applied a four-level enhancement under § 2K2.1(b)(6)(B).

**AFFIRMED.**