[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11253

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DANIEL POSEY, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:20-cr-00235-ACA-GMB-1

_____

Before GRANT, LUCK, and ANDERSON, Circuit Judges.

LUCK, Circuit Judge:

After pleading guilty, Daniel Posey appeals his sixty-month sentence for possessing a firearm as a convicted felon, in violation of 18 U.S.C. section 922(g)(1). Posey argues that the district court made three errors in calculating his advisory guideline range. First, Posey contends that the district court erred in determining his base offense level as twenty under guideline section 2K2.1(a)(4)(A) because his prior Alabama conviction for possessing marijuana for other than personal use wasn't a "controlled substance offense." Second, Posey asserts that the district court erred in applying a two-level enhancement under guideline section 2K2.1(b)(1)(A) because he possessed fewer than three firearms. And third, Posey maintains that the district court erred in applying a four-level enhancement under guideline section 2K2.1(b)(6)(B) because he didn't possess the firearms "in connection with another felony offense." We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### Offense Conduct and Guilty Plea

In May 2020, law enforcement officers in Bessemer, Alabama found a known drug dealer shot in Posey's backyard. The officers obtained an arrest warrant and used a confidential informant to arrange a controlled buy of heroin from Posey so that they could arrest him. The officers arrested Posey when he got into the confidential informant's car at the prearranged location—a Metro

PCS store—and found three guns:  an AR-15 pistol and Glock 37 in Posey's car and a Glock 23 in the confidential informant's car.

A federal grand jury indicted Posey in a one-count indictment for possessing a firearm as a convicted felon.  Posey pleaded not guilty at his initial appearance but later entered a "blind plea" of guilty.  As Posey's counsel explained at the change of plea hearing, Posey entered "a plea without benefit of the plea agreement" to avoid "stipulating to the facts for sentencing purposes."

### Presentence Investigation Report

The probation officer prepared a presentence investigation report that recommended:  (1) a base offense level of twenty under guideline section 2K2.1(a)(4)(A) because Posey "committed the instant offense subsequent to sustaining a felony conviction for a controlled substance offense"; (2) a two-level enhancement under guideline section 2K2.1(b)(1)(A) because the offense involved three firearms;  (3) a four-level enhancement under guideline section 2K2.1(b)(6)(B) because Posey "possessed firearms in connection with other felony offenses"; and (4) a three-level decrease under guideline section 3E1.1 for accepting responsibility.    The presentence investigation report used Posey's 2016 Alabama conviction for possessing marijuana for other than personal use, in violation of Alabama Code section 13A-12-213(a)(1), as his prior "controlled substance offense" under guideline section 2K2.1(a)(4)(A).  And the presentence investigation report listed the "other felony offenses" under guideline section 2K2.1(b)(6)(B) as:  (1) Posey's pending state charges for "conspiracy to distribute a

controlled substance" and "attempt to commit a controlled substance crime" that arose from the controlled sale of heroin to the confidential informant; and (2) "an alternative theory" that Posey "planned to rob the [confidential informant]." Based on a total offense level of twenty-three and a criminal history category of II, the probation officer calculated Posey's guideline range to be fifty-one to sixty-three months of imprisonment.

*Posey's Objections to the Presentence Investigation Report*

Posey objected to the presentence investigation report's: (1) calculation of his base offense level as twenty under section 2K2.1(a)(4)(A); (2) two-level enhancement for possessing three firearms under section 2K2.1(b)(1)(A); and (3) four-level enhancement for possessing a firearm in connection with another felony offense under section 2K2.1(b)(6)(B). Posey objected to the use of his Alabama marijuana conviction as a "controlled substance offense" under section 2K2.1(a)(4)(A). Posey argued that his marijuana conviction was not "categorically" a "controlled substance offense" because: (1) section 13A-12-213(a) "ma[de] it a crime to possess mari[j]uana for other than personal use and possessing mari[j]uana after prior convictions"; and (2) "[s]imple possession of drugs" did not have the "intent to distribute" required for a "controlled substance offense" under section 2K2.1(a)(4)(A).

Posey also objected to the finding that his offense involved three firearms under section 2K2.1(b)(1)(A) because "[t]he number of weapons in [his] actual or constructive possession [was] less than three." And he objected to the finding that he possessed a firearm

in connection with another felony offense under section 2K2.1(b)(6)(B) because "[t]here were no drugs found on or around [him] . . . and there [was] no evidence of robbery or other criminal offenses."

*Sentencing*

At sentencing, Posey made the same "three primary objections" to the presentence investigation report. First, Posey "preserve[d] [his] objection and continue[d] to state that [he] believe[d] that [possession of marijuana for other than personal use], as defined under Alabama law, [was] overly broad and should not be counted as a controlled substances offense." The district court overruled the objection and noted that "it[ was] on the record for appeal." Second, Posey objected to the finding that he had actual or constructive possession of the AR-15 pistol, the Glock 37, and the Glock 23 because he "would like the government to prove that all three of those weapons were associated with the offense." And third, Posey objected to the finding that Posey possessed a firearm "in furtherance of another crime."

The government presented evidence to support the enhancements for possessing three firearms and for possessing the firearms in connection with another felony offense. The government introduced video from Metro PCS's security camera and photos of the guns that the officers found inside Posey's and the confidential informant's cars. The government also called Officer Charles White, a detective with the Bessemer Police Department. Officer White testified about the shooting in Posey's backyard, the

controlled buy between Posey and the confidential informant, Posey's arrest, and the evidence the officers collected.

Officer White testified that he responded to the scene of the shooting in Posey's backyard. Officer White was familiar with Posey because Posey had been arrested in Bessemer at least five times. After the victim told law enforcement that Posey was the shooter, the officers got an arrest warrant for Posey.

The day after the shooting, Officer White arranged for the confidential informant to set up a controlled buy of heroin from Posey so that the officers could arrest him. Officer White instructed the confidential informant to send text messages to Posey saying that she wanted to buy $60 worth of heroin, which Officer White explained would be about three-tenths of a gram. Officer White was present when the confidential informant sent the text messages. Officer White explained that the confidential informant and Posey arranged to meet at the Western Hills Mall in Fairfield, Alabama.

Before the confidential informant drove to meet Posey, Officer White searched her and every part of her car and confirmed that there was no money, "contraband," or firearms. Officer White gave the confidential informant $60, placed a "wire" on her, and followed her as she drove to the Western Hills Mall. During the drive, the confidential informant told Officer White that Posey had called her and changed the meeting location to a Metro PCS store across the street from the Western Hills Mall. Officer White never

lost sight of the confidential informant's car as she drove to meet Posey.

Video from Metro PCS's security camera showed that Posey arrived at Metro PCS with two other people in a Nissan Sentra before the confidential informant arrived. Posey was in the front passenger seat, Maceo Williams was the driver, and Victoria Smith was in the backseat. When the confidential informant arrived, she pulled into a parking spot next to the Sentra. Officer White observed Posey get out of the Sentra and into the front passenger seat of the confidential informant's car.

Law enforcement officers arrested Posey before he could even shut the door to the confidential informant's car. Williams— the Sentra's driver—took off running but was caught and arrested. Smith—the Sentra's other passenger—complied with the officers' instructions and remained at the scene.

The officers searched the confidential informant's car and found a Glock 23 on the floorboard behind the driver's seat. When the officers searched the Sentra, they found a digital scale that Officer White testified was of the type commonly used to weigh narcotics. The officers also found two guns in the Sentra: (1) a Glock 37 between the center console and the driver's seat; and (2) an American Tactical AR-15 pistol leaned against the center console on the passenger's side. Officer White testified that the Glock 37 was visible and reachable from the passenger's seat and that all three guns were loaded and ready to be fired.

The officers did not find any heroin at the scene.  Officer White explained that "$60 worth of heroin can easily be thrown in the floor, drag your foot across it, you scrub it, you'll never find it." Officer White said that he took the $60 back from the confidential informant because she never gave the money to Posey.

Finally, Officer White testified that he interviewed Smith— the backseat passenger—at the jail.  Officer White said that Smith told him that "she knew that they were there [at Metro PCS] for . . . Posey and to sell narcotics or sell drugs" and that "she didn't know whose gun was whose."

After the government presented its evidence, the district court overruled Posey's two remaining objections because it found that "Posey had actual or constructive possession of those three guns" and "that the possession of those guns w[as] in furtherance of a drug offense."  The district court agreed with the presentence investigation report's determination that Posey's total offense level was twenty-three and that his criminal history category was II, making his guidelines range fifty-one to sixty-three months.  The district court sentenced Posey to sixty months of imprisonment. Posey timely appealed.

## STANDARD OF REVIEW

"We review the interpretation and application of the Sentencing Guidelines *de novo*, and we review underlying findings of fact for clear error."  *United States v. Jackson*, 997 F.3d 1138, 1140 (11th Cir. 2021).  We review for plain error sentencing issues that

were not preserved with an objection in the district court. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005).

## DISCUSSION

Posey raises three issues on appeal. First, he argues that the district court erred in concluding that his Alabama marijuana conviction was a predicate "controlled substance offense" under section 2K2.1(a)(4)(A). Next, Posey contends that the district court erred in finding that Posey possessed three firearms under section 2K2.1(b)(1)(A). And, finally, Posey argues that the district court erred in finding that he possessed the firearms "in connection with" another felony offense under section 2K2.1(b)(6)(B).

*Section 2K2.1(a)(4)(A)—"Controlled Substance Offense"*

Section 2K2.1(a)(4)(A) provides that a defendant's base offense level is twenty "if . . . the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A) (Nov. 2018). A "controlled substance offense" is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." *Id.* § 4B1.2(b); *see id.* §2K2.1 cmt. n.1. "We apply the categorical approach to determine what constitutes a controlled substance offense, which means that we compare the definition in the

[g]uidelines with the statutory offense, not the conduct underlying the conviction." *United States v. Lange*, 862 F.3d 1290, 1293 (11th Cir. 2017) (quotation omitted).

Section 13A-12-213(a)(1) of the Alabama Code makes it a felony for a person to "possess[] mari[j]uana for other than personal use." Ala. Code § 13A-12-213(a)(1). At the time of Posey's section 13A-12-213(a)(1) conviction, Alabama law defined marijuana to include hemp, *see* Ala. Code § 20-2-2(14) (2001) (defining marijuana as "[a]ll parts of the plant Cannabis sativa L."), as did the federal Controlled Substances Act, *see* 21 U.S.C. § 802(16) (2014) (same). After Posey's section 13A-12-213(a)(1) conviction but before his federal sentencing, however, Alabama amended the definition of marijuana to exclude hemp, *see* 2019 Ala. Laws 2019-502; *see also* Ala. Code § 20-2-2(14) (2019), as did Congress, *see* Agriculture Improvement Act of 2018, Pub. L. No. 115-334, 132 Stat. 4490; *see also* 21 U.S.C. § 802(16)(B)(i). Because the definition of marijuana under Alabama and federal law included hemp at the time of his section 13A-12-213(a)(1) conviction but excluded hemp at the time of his federal sentencing, Posey argues that his section 13A-12-213(a)(1) conviction wasn't categorically a "controlled substance offense" under section 2K2.1(a)(4)(A).

### We review Posey's argument for plain error

At the outset, the government responds that we should review Posey's argument for plain error because Posey didn't argue in the district court that hemp wasn't a controlled substance. The government contends that the district court never had the

opportunity to rule on whether hemp's decriminalization made section 13A-12-213(a)(1) categorically overbroad because the only basis for Posey's objection was that section 13A-12-213(a)(1) criminalized possession of marijuana without requiring an intent to distribute. We agree.

"We have held that to preserve an objection to a sentencing determination, a party 'must raise that point in such clear and simple language that the trial court may not misunderstand it.'" *United States v. Brown*, 934 F.3d 1278, 1306 (11th Cir. 2019) (quoting *United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006)). The objection must be "sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought." *United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) (quotation omitted); *see United States v. Hoffer*, 129 F.3d 1196, 1202 (11th Cir. 1997) ("To preserve an issue for appeal, an objection must be sufficiently detailed to allow the trial court an opportunity to correct any arguable errors before an appeal is taken."). We don't "expect some sort of ritualistic incantation from trial lawyers to make an effective objection; but we can and do expect plain talk sufficient to direct the presiding officer's attention to the existence of an objection and to the specific ground that underlies the objection." *United States v. Madruga*, 810 F.2d 1010, 1014 (11th Cir. 1987); *see United States v. Corbett*, 921 F.3d 1032, 1043 (11th Cir. 2019) ("We remind the defense bar of the importance of *specific* factual and legal argumentation at every stage of sentencing proceedings.").

We require parties to state the specific ground for an objection "to provide the trial judge an opportunity to avoid or correct any error, and thus avoid the costs of reversal." *United States v. Sorondo*, 845 F.2d 945, 948–49 (11th Cir. 1988) (quotation omitted); *see United States v. DiFalco*, 837 F.3d 1207, 1220 n.2 (11th Cir. 2016) ("The purpose behind imposing the requirements of plain[-]error review is to enforce the requirement that these kinds of objections should first be made in district court so that the trial court may address and resolve them contemporaneously."). "[T]he district court is not expected to read minds or independently conceive of every possible argument a party might raise in support of an objection." *United States v. Zinn*, 321 F.3d 1084, 1090 n.7 (11th Cir. 2003); *see Madruga*, 810 F.2d at 1014 ("We decline to add the duty to interpret imaginatively what lawyers say to the long list of responsibilities of magistrates and other trial judges."). Thus, an issue isn't properly preserved for appeal if a defendant doesn't clearly state the "legal basis for the objection" and the "legal theory" that supports it. *Massey*, 443 F.3d at 819.

Posey's objection to his base offense level under section 2K2.1(a)(4)(A) neither informed the district court that hemp's decriminalization was "the particular ground[] upon which appellate relief  w[ould] later be sought," *see Straub*, 508 F.3d at 1011, nor provided the district court an "opportunity to avoid or correct any error," *see Sorondo*, 845 F.2d at 948–49. Although Posey now contends that his section 13A-12-213(a)(1) conviction isn't categorically a "controlled substance offense" because hemp wasn't a

controlled substance at the time of his sentencing, that was not the argument he made to the district court. In his objections to the presentence investigation report, Posey objected that his section 13A-12-213(a)(1) conviction wasn't categorically a "controlled substance offense" for a specific reason—section 13A-12-213(a)(2) criminalized only the possession of marijuana after prior convictions. Posey argued that because section 13A-12-213(a) criminalized "[s]imple possession" without "an intent to distribute," his conviction wasn't categorically a "controlled substance offense" under section 2K2.1(a)(4)(A), which requires possession with intent to distribute. And at the sentencing hearing, Posey "preserve[d]" and "continue[d] to state" that specific objection.

Put simply, Posey never mentioned the word "hemp," let alone argued that hemp's decriminalization was the legal basis of his objection. His objection in the district court centered on the act of possession while his new argument centers on the type of substance he possessed. The district court wasn't required to read Posey's mind or to "independently conceive of every possible argument" Posey could've raised in support of his objection. *See* *Zinn*, 321 F.3d at 1090 n.7.

Posey contends that we should review his argument de novo because his objection in the district court "preserved the specific *issue* of whether [section 13A-12-213(a)(1)] was overly broad" and he is therefore "free to make any argument to support that position." Posey is right that "once a party has preserved an issue, it may 'make any argument in support of that claim; parties

are not limited to the precise arguments they made below.'" *Brown*, 934 F.3d at 1306–07 (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)).  But while there "may be a fine line between a new 'claim' or 'objection' on the one hand, and a new 'twist' on a preserved claim on the other," *United States v. Green*, 996 F.3d 176, 184 (4th Cir. 2021) (citations omitted), we've said that a sentencing objection in the district court that is "substantively different" from the argument raised on appeal fails to preserve the objection, *United States v. Ramirez-Flores*, 743 F.3d 816, 821 (11th Cir. 2014).  And the objection Posey made to his sentence in the district court is "substantively different" from the argument he makes for the first time on appeal.

Two of our decisions—*Ramirez-Flores* and *United States v. Weeks*, 711 F.3d 1255 (11th Cir. 2013), *abrogated on other grounds by Descamps v. United States*, 570 U.S. 254 (2013)—show when an objection is "substantively different" from an argument raised on appeal.  In *Ramirez-Flores*, the defendant pleaded guilty to illegal re-entry after deportation.  743 F.3d at 819.  The defendant's presentence investigation report found that his prior South Carolina conviction for burglary of a dwelling qualified as a "crime of violence," leading to a sixteen-level enhancement under the guidelines.  *Id.*  The defendant objected to the enhancement, arguing "that the South Carolina burglary conviction did not constitute a 'crime of violence' because the corresponding judgment described the offense as 'Burglary (Non-Violent)'" and "speculat[ing] that,

while the indictment charged him with entering the 'dwelling' of the victim, he may have pled guilty to a lesser offense." *Id.*

The district court overruled the objection and the defendant appealed his sentence, arguing for the first time that his South Carolina burglary conviction wasn't categorically a crime of violence because the South Carolina burglary statute wasn't divisible. *See id.* at 819–21. We reviewed for plain error because the defendant's objections in the district court were "substantively different from the argument" the defendant raised on appeal. *Id.* at 821.

And in *Weeks*, the defendant pleaded guilty to being a felon in possession of a firearm. 711 F.3d at 1257. The defendant's presentence investigation report found that he qualified for an enhanced mandatory minimum sentence under the Armed Career Criminal Act because he had four prior convictions for violent felonies that were "committed on occasions different from one another," including three convictions for burglary of a structure. *Id.* The defendant objected to the enhancement, arguing that two of the burglaries were not "separate and distinct offenses" because they happened on the same day and "the spatial and temporal proximity of [the two burglarized structures] did not leave him with enough time 'to make a new and different intent to enter into a separate building.'" *Id.* at 1258. The district court overruled the defendant's objection, finding that his prior burglary offenses were "each separate and distinct." *Id.*

The defendant appealed his sentence, arguing for the first time that the district court erred in determining that the two

burglary offenses were separate predicate offenses because it was "impossible to determine whether he himself burglarized more than one structure or whether the burglaries were committed successively" because "he could have remained in one of the burglarized buildings while his two accomplices simultaneously burglarized the other." *Id.* at 1260–61. We reviewed for plain error because the defendant "did not make that argument before the district court." *Id.* at 1261.

Like the defendants in *Ramirez-Flores* and *Weeks*, Posey makes an argument on appeal that is "substantively different" from his objection in the district court. If the *Ramirez-Flores* defendant's objection that his prior conviction wasn't a "crime of violence" because he was convicted of non-violent burglary didn't preserve his argument that the statute of conviction was indivisible, then Posey's objection that his Alabama marijuana conviction wasn't categorically a "controlled substance offense" because section 13A-12-213(a)(2) criminalized possession without intent to distribute didn't preserve his argument that hemp isn't a controlled substance. Similarly, if the *Weeks* defendant's objection that his prior burglary convictions weren't "separate and distinct offenses" because he didn't have time to form a separate intent didn't preserve his argument that he burglarized only one building, then Posey's "simple possession" objection didn't preserve his hemp argument. Posey's substantively different objection did not tee up the specific issue of whether hemp was a controlled substance so that the

district court had "an opportunity to avoid or correct any error." *See Sorondo*, 845 F.2d at 948–49.

Because Posey didn't preserve the hemp issue at sentencing, our review is only for plain error. *See Rodriguez*, 398 F.3d at 1298. Under plain-error review, Posey "must show that there is (1) 'error' (2) that is 'plain' and (3) that 'affect[s] substantial rights." *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1290 (11th Cir. 2003) (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). If Posey shows that all three conditions are met, then we may "exercise [our] discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (alteration in original) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).

<u>The district court did not plainly err</u>

Any error by the district court in determining Posey's base offense level as twenty under section 2K2.1(a)(4)(A) wasn't plain. "An error is 'plain' if it is 'obvious' or 'clear under current law.'" *United States v. Wims*, 245 F.3d 1269, 1272 (11th Cir. 2001) (quoting *Olano*, 507 U.S. at 734). And an error is "obvious" or "clear" "if 'the explicit language of a statute or rule' or 'precedent from the Supreme Court or this Court *directly* resolv[es]' the issue." *United States v. Innocent*, 977 F.3d 1077, 1081 (11th Cir. 2020) (alteration in original and emphasis added) (quoting *United States v. Hesser*, 800 F.3d 1310, 1325 (11th Cir. 2015)). Neither we nor the Supreme Court has ever addressed whether a state marijuana conviction continues to qualify as a predicate "controlled substance offense"

under section 2K2.1(a)(4)(A) when hemp has been delisted from both the state and federal drug schedules before a defendant's federal sentencing. Because our precedent does not directly resolve whether Posey's section 13A-12-213(a)(1) conviction is categorically a "controlled substance offense" under section 2K2.1(a)(4)(A), the district court did not plainly err in concluding that it was. *See Lejarde-Rada*, 319 F.3d at 1291.

### Section 2K2.1(b)(1)(A)—Possession of Three Firearms

Posey also argues that the district court erred by enhancing his sentence two levels for possessing three firearms under section 2K2.1(b)(1)(A). Posey contends that the government's evidence at sentencing does not support the district court's finding that he "had actual or constructive possession" of two of the firearms—the Glock 37 and Glock 23.

Section 2K2.1(b)(1)(A) requires a two-level enhancement "[i]f the offense involved" three firearms. U.S.S.G. § 2K2.1(b)(1)(A). "For purposes of calculating the number of firearms under subsection (b)(1), [the district court] count[s] only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed . . . ." *Id.* § 2K2.1(b)(1) cmt. n.5. "For sentencing purposes, possession of a firearm involves a factual finding, which we review for clear error." *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006).

"When a defendant challenges one of the factual bases of a sentence enhancement, the [g]overnment has the burden of

establishing the disputed fact by a preponderance of the evidence." *United States v. Matthews*, 3 F.4th 1286, 1289 (11th Cir. 2021). The district court's factual findings may be based on "evidence presented at the sentencing hearing," and the district court may "make reasonable inferences from the evidence." *Id.*; *see United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013) (explaining that a sentencing court may make inferences "based on common sense and ordinary human experience"). The district court's finding that Posey possessed the Glock 37 and Glock 23 wasn't clearly erroneous because the evidence presented at the sentencing hearing supported a reasonable inference that Posey possessed both firearms.

"Possession of a firearm may be either actual or constructive." *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011). "Constructive possession of a firearm exists when a defendant does not have actual possession but instead knowingly has the power or right, and intention to exercise dominion and control over the firearm." *Id.* "As long as the [g]overnment proves, through either direct or circumstantial evidence that the defendant (1) was aware or knew of the firearm's presence and (2) had the ability and intent to later exercise dominion and control over that firearm, the defendant's constructive possession of that firearm is shown." *Id.* "However, a defendant's mere presence in the area of [a firearm] or awareness of its location is not sufficient to establish possession." *United States v. Green*, 873 F.3d 846, 852–53 (11th Cir. 2017) (quotation omitted).

The evidence presented at the sentencing hearing supported a reasonable inference that Posey had constructive possession of the Glock 37. The district court reasonably inferred that Posey was aware of the Glock 37's presence between the center console and the driver's seat and that he had the ability to control it because it was visible and accessible from where he sat in the Sentra's passenger seat. And as to Posey's intent to later exercise dominion and control over the Glock 37, "the connection between drug-dealing and firearm possession is an appropriate one to be drawn during a felon-in-possession case." *United States v. McLellan*, 958 F.3d 1110, 1115 (11th Cir. 2020); *see United States v. Thomas*, 242 F.3d 1028, 1032 (11th Cir. 2001) (holding "that the evidence of [the defendant]'s drug trafficking was in sufficiently close proximity, temporally and physically, to be relevant to proving that [the defendant] knowingly possessed the weapons"). The evidence showed that Posey had shot another drug dealer the day before, that the Glock 37 was loaded and ready to fire, and that he brought the Glock 37 with him to Metro PCS for a drug deal. It wasn't clearly erroneous for the district court to infer that Posey intended to use the Glock 37 if the drug deal didn't go as planned.

The evidence also supported a reasonable inference that Posey actually possessed the Glock 23. Officer White testified that there weren't any weapons in the confidential informant's car when she left to meet Posey, that he followed her as she drove to meet Posey, and that he never lost sight of the confidential informant's car during the drive. When the confidential informant arrived

at Metro PCS, Posey left the Sentra and got into the front passenger seat of the confidential informant's car. And the officers found the Glock 23 in the confidential informant's car after Posey was arrested in the passenger seat. These circumstances support a reasonable, common-sense inference that Posey brought the Glock 23 with him as he left the Sentra to sell heroin to the confidential informant in her car. See *Philidor*, 717 F.3d at 885; *McLellan*, 958 F.3d at 1115.

Posey argues that the district court could not have found that he possessed the Glock 23 "absent improper speculation" because "there was a period of time between the takedown and the post-takedown vehicle search during which the [confidential informant]'s vehicle was unaccounted for." But even if another reasonable inference could have been made from the evidence, that doesn't mean that the district court clearly erred by not making it. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010) (quotation omitted). Here, it was reasonable for the district court to find that the Glock 23 came from Posey and not from someone else in the time between the takedown and the search.

### Section 2K2.1(b)(6)(B)—"Another Felony Offense"

"Section 2K2.1(b)(6)(B) increases the defendant's offense level by four if he unlawfully possessed a firearm and he did so 'with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense.'" *United*

*States v. Martinez*, 964 F.3d 1329, 1333 (11th Cir. 2020) (quoting U.S.S.G. § 2K2.1(b)(6)(B)).  "[S]ection 2K2.1(b)(6)(B) applies 'if the firearm . . . facilitated, or had the potential of facilitating, another felony offense.'"  *Id.* at 1336 (quoting U.S.S.G. § 2K2.1 cmt. n.14(A)).  "The determination that a defendant possessed a firearm 'in connection with' another felony is a finding of fact.'"  *Jackson*, 997 F.3d at 1140.  Here, the district court found that Posey possessed the AR-15 pistol, Glock 37, and Glock 23 "in furtherance of a drug offense"—his conspiracy and attempt to sell heroin to the confidential informant.  The district court's finding is not clearly erroneous.

The evidence showed that Posey's firearms "had the potential of facilitating" Posey's conspiracy and attempt to traffic heroin because he brought them to a drug deal.  *See Martinez*, 964 F.3d at 1336.  The confidential informant texted Posey to set up a heroin deal, Posey showed up at the prearranged location with three loaded firearms and a digital scale used for weighing drugs, and Posey left the Sentra and got into the confidential informant's car with the Glock 23 to make the sale.  Williams, the Sentra's driver, fled as soon as the officers arrived, and Smith, the Sentra's other passenger, told Officer White that "they were there for . . . Posey and to sell narcotics or sell drugs."  Based on this evidence, it wasn't clearly erroneous for the district court to infer that Posey brought the firearms with him to facilitate a drug deal.  *See United States v. Jackson*, 276 F.3d 1231, 1234–35 (11th Cir. 2001) (concluding "that possession of a firearm with intent to use it to facilitate the

commission of a felony offense, or with intent to use it should it become necessary to facilitate that crime, is possession 'in connection with' that offense" because "it made sense to conclude that the firearm potentially emboldened the defendant to undertake illicit drug sales" and because there was a reasonable "inference that the defendants would have, if necessary, used their firearms in furtherance of their crimes"); *Thomas*, 242 F.3d at 1032 n.5 (explaining that evidence that the defendant sold drugs from his residence, used a firearm in connection with a robbery during a drug-related transaction, and stored a large amount of cash in his residence "support[ed] the inference that [the defendant] was using the weapons found at his residence to protect the drug business he was conducting there").

Posey contends that the district court clearly erred because of "[t]hree glaring shortcomings in the [g]overnment's evidence" and because the district court "fail[ed] to make specific factual findings regarding the reliability of the [confidential informant]'s hearsay statements." First, Posey argues, there was no heroin found at the scene. But, as Officer White testified, just because heroin wasn't found doesn't mean it wasn't there because Posey could've "easily . . . thrown [it] in the floor, drag[ged his] foot across it . . . [and] scrub[bed] it." Posey texted the confidential informant to set up a drug sale, he showed up to the drug sale, he had a digital scale with him, and the Sentra's other passenger told Officer White it was a drug sale. For these reasons, the district court's finding that Posey possessed the firearms in connection with his conspiracy and

attempt to sell heroin to the confidential informant wasn't clearly erroneous.

Second, Posey argues that Officer White's testimony about what the confidential informant told him was unreliable hearsay. And because the confidential informant's hearsay statements were unreliable, Posey asserts, the district court clearly erred because it didn't make "specific findings" about their reliability. But there is no need for specific reliability findings when the hearsay statement's reliability "is apparent from the record." *See United States v. Baptiste*, 935 F.3d 1304, 1316 (11th Cir. 2019) (quoting *United States v. Gordon*, 231 F.3d 750, 761 (11th Cir. 2000)). Here, it was. The confidential informant's hearsay statements "aligned with" Officer White's non-hearsay testimony, Metro PCS's security video, the guns and digital scale found in the Sentra, the Glock 23 found in the confidential informant's car, and Officer White's testimony that Smith told him "they were there . . . to sell narcotics or sell drugs." *See id.* at 1317 (concluding that hearsay testimony had sufficient "indicia of reliability" where it "aligned with" other evidence); *Gordon*, 231 F.3d at 761 (concluding that hearsay evidence was sufficiently reliable where the hearsay statements from three individuals were "materially consistent" and "corroborate[d] each other on the key points"). Because the confidential informant's hearsay statements had "sufficient indicia of reliability," the district court didn't err by relying on them. *See Baptiste*, 935 F.3d at 1319.

Third, Posey argues that the district court was "required to make additional findings as to how Posey's firearm[s] facilitated a

felony" because "no drugs were found at the scene." But, as we've explained, the district court reasonably credited Officer White's testimony about how Posey could've disposed of the heroin before the officers arrested him. And in any event, Posey's other felony offenses—his conspiracy and attempt to sell heroin to the confidential informant—didn't require drugs to be found to be complete. Section 2K2.1(b)(6)(B) only requires the firearms to have had "the *potential* of facilitating" Posey's other felony offenses. *Martinez*, 964 F.3d at 1336 (quotation omitted and emphasis added). Just because law enforcement arrested Posey before he could consummate the sale doesn't mean that he didn't possess the firearms "in connection with" his conspiracy and attempt to sell drugs. Drug dealers keep firearms around to protect themselves, to use them if things go bad, and to embolden themselves to do the deal. *See Jackson*, 276 F.3d at 1234–35; *Thomas*, 242 F.3d at 1032 n.5. The district court had plenty of evidence to find that Posey's firearms "had the potential of facilitating" his felony drug offenses, even if the sale never happened. *See* U.S.S.G. § 2K2.1 cmt. n.14(A).

AFFIRMED.